Diana Palacios (State Bar No. 290923)
   dianapalacios@dwt.com
Eric H. Lamm (State Bar No. 324153)
   ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:   (213) 633-6899

Attorneys for Defendants
THE ATHLETIC MEDIA
COMPANY and MOLLY KNIGHT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>                    Plaintiff,<br><br>      vs.<br><br>THE ATHLETIC MEDIA COMPANY and MOLLY KNIGHT,<br><br>                    Defendants. | Case No. 2:22-cv-02062-MWF-AGR<br>Assigned for all purposes to the Hon. Michael W. Fitzgerald<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS THE ATHLETIC MEDIA COMPANY AND MOLLY KNIGHT TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Request for Judicial Notice and Declaration of Diana Palacios filed and [Proposed] Order lodged concurrently*]<br><br>Date:    August 29, 2022<br>Time:    10:00 a.m.<br>Dept.:    5A<br><br>Action Filed: March 29, 2022 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2022 at 10:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 5A of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA 90012, defendants The Athletic Media Company ("The Athletic") and Molly Knight ("Knight") (collectively, "Defendants") will and hereby do move this Court to dismiss the Complaint brought by Plaintiff Trevor Bauer ("Bauer") in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

1.   Bauer's first claim for defamation per se fails as a matter of law because (a) Bauer has failed to adequately plead compliance with California's retraction statute, Cal. Civ. Code § 48a, or any special damages; (b) Bauer's claim arises from an accurate report of the contents of a court filing and is accordingly barred by the "fair and true report" privilege, Cal. Civ. Code § 47(d); (c) Bauer's pleaded defamatory implication fails as a matter of law; (d) the statement at issue, and its alleged implication, is substantially true; (e) Bauer has not adequately pleaded, and cannot adequately plead, actual malice against The Athletic.

2.   Bauer's second claim for defamation per se fails as a matter of law because (a) Knight's statements cannot reasonably be interpreted as stating or implying actual facts about Bauer; (b) even if deemed factual, Knight's statements, and their alleged implications, are substantially true; and (c) Bauer has not adequately pleaded, and cannot adequately plead, actual malice against Knight.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 24, 2022. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice in support of Defendants' Special Motion to Strike and Motion to Dismiss, the Declaration of Diana Palacios in support of Defendants' Special Motion to Strike and Motion to Dismiss and all attached exhibits, and on any other

matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

DATED: May 31, 2022

DAVIS WRIGHT TREMAINE LLP
Diana Palacios
Eric H. Lamm

By: _/s/ Diana Palacios_
        Diana Palacios

Attorneys for Defendants THE ATHLETIC MEDIA COMPANY and MOLLY KNIGHT

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................ 1

II.   STATEMENT OF FACTS .......................................................................... 2

      A.    Bauer Is a Public Figure ............................................................ 2

      B.    L.H. Files a Petition for a Restraining Order Against Bauer .............. 3

      C.    The Athletic Reports on L.H.'s Petition for a Restraining Order ........ 5

      D.    The Knight Tweets .................................................................... 6

      E.    Bauer Contacts The Athletic ...................................................... 8

      F.    This Action .............................................................................. 8

III.  LEGAL STANDARD ................................................................................ 8

IV.   BAUER'S FIRST DEFAMATION CLAIM SHOULD BE
      DISMISSED WITH PREJUDICE ................................................................. 9

      A.    California's Retraction Statute Bars Bauer's First Defamation
            Claim ................................................................................. 9

      B.    The Article Is Privileged as a Fair and True Report of L.H.'s
            Petition ............................................................................... 11

      C.    Bauer's Defamation by Implication Claim Fails ............................. 14

            1.    The Alleged Implication Is Unreasonable as a Matter of
                  Law ........................................................................... 14

            2.    The Article Is Substantially True ........................................ 16

            3.    Bauer Fails to Show the Purportedly Defamatory
                  Implication Was Made with Actual Malice ........................... 17

V.    BAUER'S SECOND DEFAMATION CLAIM SHOULD BE
      DISMISSED WITH PREJUDICE ................................................................ 20

      A.    The Tweets Do Not Assert Objective Facts .................................. 20

            1.    The Broad Context of the Tweets ...................................... 21

            2.    The Specific Context of the Tweets .................................... 22

            3.    The Tweets Cannot Be Proven True or False ........................ 23

      B.    The Alleged Implications of the Tweets are Substantially True ........ 24

      C.    Bauer Fails to Sufficiently Allege Actual Malice .......................... 24

i

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
VI.    CONCLUSION.............................................................................................. 25
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anschutz Ent. Grp., Inc. v. Snepp*,
   171 Cal. App. 4th 598 (2009) ............................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................... 8, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 8, 9

*Blatty v. N.Y. Times Co.*,
   42 Cal. 3d 1033 (1986) ..................................................................... 20

*Carney v. Santa Cruz Women Against Rape*,
   221 Cal. App. 3d 1009 (1990) ............................................................ 18

*Cepeda v. Cowles Magazines. & Broad., Inc.*,
   392 F.2d 417 (9th Cir. 1968) ............................................................. 18

*Church of Scientology v. Flynn*,
   744 F.2d 694 (9th Cir. 1984) ............................................................. 15

*Citcon USA, LLC v. RiverPay Inc.*,
   No. 20-16929, 2022 WL 287563 (9th Cir. Jan. 31, 2022) .......................... 22

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp. 2d 1113 (C.D. Cal. 1998) ........................................... 23, 24

*Colt v. Freedom Commc'n, Inc.*,
   109 Cal. App. 4th 1551 (2003) ........................................................... 14

*Couch v. San Juan Unified Sch. Dist.*,
   33 Cal. App. 4th 1491 (1995) ............................................................. 15

*Crane v. Ariz. Republic*,
   972 F.2d 1511 (9th Cir. 1992) ...................................................... 12, 13

*Dorsey v. Nat'l Enquirer, Inc.*,
   973 F.2d 1431 (9th Cir. 1992) ........................................................... 12

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Forsher v. Bugliosi*,
   26 Cal. 3d 792 (1980) ........................................................................ 14, 15, 16

*Gallagher v. Philipps*,
   563 F. Supp. 3d 1048 (S.D. Cal. 2021)................................................... 10

*Gilbert v. Sykes*,
   147 Cal. App. 4th 13 (2007) ................................................................... 16

*Global Telemedia Int'l, Inc. v. Doe 1*,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) ................................................. 23

*Greenspan v. Qazi*,
   No. 20-cv-03426, 2021 WL 2577526 (N.D. Cal. June 23, 2021) ....... 21

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)................................................................... 18, 19, 25

*Healthsmart Pac., Inc. v. Kabateck*,
   7 Cal. App. 5th 416 (2016) .............................................................. 11, 12

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020)................................................... 21

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021) .................................................... 20, 22, 24

*Hoffman v. Cap. Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) ............................................................... 18

*In re Yagman*,
   796 F.2d 1165 (9th Cir. 1986) ............................................................... 23

*Info. Control Corp. v. Genesis One Comp. Corp.*,
   611 F.2d 781 (9th Cir. 1980) ................................................................. 22

*Issa v. Applegate*,
   31 Cal. App. 5th 689 (2019) ............................................................ 14, 15

*Kilgore v. Younger*,
   30 Cal. 3d 770 (1982) ............................................................................ 12

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................... 21

iv

*Leeb v. Delong*,
　198 Cal. App. 3d 47 (1988) ................................................................. 10

*Martin v. Wells Fargo Bank*,
　No. 2:17-cv-03425, 2018 WL 6333688 (C.D. Cal. Jan. 18, 2018) .............. 11

*Masson v. New Yorker Mag., Inc.*,
　501 U.S. 496 (1991) ............................................................... 16, 18

*McClatchy Newspapers, Inc. v. Superior Ct.*,
　189 Cal. App. 3d 961 (1987) ........................................................ 11, 12

*McFarlane v. Sheridan Square Press, Inc.*,
　91 F.3d 1501 (D.C. Cir. 1996) ............................................................. 20

*N.Y. Times Co. v. Sullivan*,
　376 U.S. 254 (1964) ................................................................. 14, 20

*Newcombe v. Adolf Coors Co.*,
　157 F.3d 686 (9th Cir. 1998) ............................................................. 11

*Newton v. Nat'l Broad. Co.*,
　930 F.2d 662 (9th Cir. 1990) ............................................................. 18

*Nicosia v. De Rooy*,
　72 F. Supp. 2d 1093 (N.D. Cal. 1999) ............................................. 22, 24

*Nunes v. Cable News Network, Inc.*,
　31 F.4th 135 (2d Cir. 2022) ............................................................. 11

*Obsidian Fin. Grp., LLC v. Cox*,
　812 F. Supp. 2d 1220 (D. Or. 2011) ..................................................... 21

*Partington v. Bugliosi*,
　56 F.3d 1147 (9th Cir. 1995) ............................................................. 22

*Planned Parenthood Fed. of Am., Inc. v. Center for Med. Progress*,
　890 F.3d 828 (9th Cir. 2018) ............................................................... 1

*Reader's Dig. Ass'n v. Superior Ct.*,
　37 Cal. 3d 244 (1984) ..................................................................... 18

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
　302 F. Supp. 3d 1005 (N.D. Cal. 2017) ............................................. 19, 25

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Rodriguez v. Panayiotou*,
   314 F.3d 979 (9th Cir. 2002) ................................................................ 24

*Shahid Buttar for Cong. Comm. v. Hearst Commc'n*,
   No. 21-cv-05566, 2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ............... 10, 20

*Sipple v. Foundation for Nat. Progress*,
   71 Cal. App. 4th 226 (1999) .............................................................. 11

*State v. Van*,
   688 N.W.2d 600 (Neb. 2004)................................................................ 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................ 9

*Thomas v. L.A. Times Commc'ns, LLC*,
   189 F. Supp. 2d 1005 (C.D. Cal. 2002) .............................................. 18

*Tiedemann v. Superior Ct.*,
   83 Cal. App. 3d 918 (1978) ............................................................... 12

*Turner v. City & Cnty. of S.F.*,
   788 F.3d 1206 (9th Cir. 2015) ............................................................ 9

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ........................................................... 21, 23

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) .............................................. 19, 25

**Statutes**

Cal. Civ. Code
   § 47(d) ............................................................................................ 11
   § 48a(a)............................................................................................. 9
   § 48a(d)(1)........................................................................................ 11
   § 48a(d)(2) ....................................................................................... 10
   § (d)(5) ............................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................... 1, 8, 9, 10

vi

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Other Authorities**

Dictionary of Modern Medicine ........................................................................ 5

McGraw-Hill Concise Dictionary of Modern Medicine (2002) ............................ 4, 5

Medical Dictionary for the Health Professions and Nursing (2012) ......................... 5

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT[1]

Plaintiff Trevor Bauer ("Bauer") is a famous athlete whose violent sexual encounters with a woman are at the center of an ongoing public controversy over his treatment of women, the limits of consent, and the discipline he should face from Major League Baseball. But the legal issues here are very narrow: whether a single line in a story by The Athletic (the "Article") and three tweets (the "Tweets") by reporter Molly Knight ("Knight") defamed him. They did not.

In his first claim for relief, Bauer asserts that The Athletic defamed him by quoting a woman's sworn statement, submitted to a court in support of an application for a restraining order. In that statement, the woman said that as a result of violence he inflicted on her during sex, she went to an emergency room with "signs of a basilar skull fracture." This, he says, is false and defamatory because a subsequent CT scan did not find a fracture.

Bauer's Complaint does not deny that the Article faithfully quotes this statement or that it is true. He also does not deny that he choked the woman until she was unconscious multiple times. He does not deny that he—a man who makes a living by the strength of his arm—violently and repeatedly punched her in the head, vagina, and buttocks. And he does not deny that he caused her injuries. In short, Bauer admits to hitting a woman hard enough that doctors worried he had fractured her skull but claims it was defamatory not to explain that he did not manage to do it.

---

[1]  This Motion asserts similar arguments to those in sections IV and V of Defendants' concurrently filed Anti-SLAPP Motion. Because Defendants' Anti-SLAPP Motion, like this Motion, challenges the legal sufficiency of Bauer's claims and relies solely on the pleadings, the documents incorporated by reference into Bauer's Complaint, and matters of judicial notice, both Motions are governed by the same Rule 12(b)(6) standard. *See Planned Parenthood Fed. of Am., Inc. v. Center for Med. Progress*, 890 F.3d 828, 832 (9th Cir. 2018). Defendants have filed this Motion to respond to Bauer's Complaint as required under Federal Rule of Civil Procedure 12.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Bauer's first claim fails for multiple independent reasons. First, Bauer has failed to adequately plead compliance with California's retraction statute or plead any special damages. Second, the Article fairly and accurately reports on a court filing and is therefore absolutely privileged from liability. Third, the Article does not reasonably imply that Bauer fractured the woman's skull, and even if it did, the Article would be substantially true. Finally, Bauer fails to adequately plead actual malice against The Athletic.

Bauer's second claim relates to three tweets (the "Tweets") that defendant Molly Knight, who did not write the Article, posted on her Twitter account. In response to the petition for a restraining order, Bauer issued a statement (which the Article reported) defending his violence as "100% consensual." The Tweets pushed back on that theory, opining that it is "not possible to consent to a cracked skull" and that "saying you'd like to engage in rough sex . . . does not equal consent to a cracked skull." Bauer apparently does not contest that Knight's statements regarding the scope of consent are protected opinion. Instead, he asserts that he was defamed by mere references to a "cracked" or "fractured" skull.

Bauer's second claim fails as a matter of law because Knight's Tweets cannot reasonably be interpreted as assertions of fact and are thus constitutionally protected opinions. But even if they could be read to assert facts, Bauer's second claim would fail for the same basic reason as his first: the Tweets are substantially true, and Bauer has failed to plead actual malice against Knight.

For each of these reasons, Defendants respectfully request that the Court dismiss Bauer's Complaint with prejudice.

## II.    STATEMENT OF FACTS

### A.    Bauer Is a Public Figure

Bauer is a Major League Baseball pitcher and one of the highest-paid players in the country. Compl. ¶¶ 15, 22. For many years, Bauer has also been a controversial figure due to his provocative online personality and what many see as his problematic

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

treatment of women. *See, e.g.*, *id.* ¶¶ 17-19; Declaration of Diana Palacios ("Palacios Decl.") Exs. F (describing Bauer's acknowledgement of Bauer and his followers' purported online harassment of woman), K (recounting incident where Bauer filmed conversation between two young women and posted it online).[2] At times, Bauer has seemingly relished this notoriety: In a 2018 Twitter exchange with Knight, Bauer stated: "Spare me from what? The WRATH of twitter? Lol it's fairly clear I welcome that." *See id.* Ex. R.

**B.     L.H. Files a Petition for a Restraining Order Against Bauer**

On June 28, 2021, a woman ("L.H.")[3] filed an *ex parte* petition (the "Petition") with the Superior Court of California, seeking a restraining order against Bauer. In support of the Petition, L.H. attached a sworn declaration and exhibits, making detailed allegations of sexual violence. Compl. ¶ 34; *see* Palacios Decl. Ex. E (L.H.'s Petition).

In the declaration, L.H. recounted how she met and began flirting with Bauer via social media in 2021. Palacios Decl. Ex. E at 28. On April 21, 2021, she met him at his home and, later that night, they initiated consensual sex. *Id.* at 28-29. L.H. stated that, while she consented to having rough sex, Bauer exceeded this consent by, first, "putting his fingers down [her] throat," then after stopping at L.H.'s request, by choking L.H. with her hair until she lost consciousness. *Id.* at 29. Bauer then began having "extremely painful" anal sex with L.H. while she was unconscious. *Id.* When she regained consciousness and told Bauer to stop, he did, but later made a joke about the pain that L.H. was in. *Id.* at 29-30. L.H. told him it was not a joke and that she "did not enjoy when he commenced anal sex." *Id.* at 30.

---

[2] As set forth in Defendants' concurrently filed Request for Judicial Notice, all Exhibits relied upon in this Motion are incorporated by reference into Bauer's Complaint and/or are subject to judicial notice for the purposes on which Defendants rely.

[3] Consistent with The Athletic's general practice of not naming the alleged victims of sexual assault, Defendants refer here to the complainant by initials, only. However, L.H.'s full name appears in the public record.

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

L.H. continued to communicate with Bauer after this encounter and, on May 15, 2021, she went to Bauer's house for a second time, where they again initiated consensual sex. *Id.* However, according to L.H.'s declaration, it quickly devolved into a brutally violent and non-consensual attack by Bauer. He choked her until she was unconscious. *Id.* at 31. When she regained consciousness, Bauer continued having sex with her, and then repeatedly punched her in the face and head with a closed fist, which L.H. stated was "extremely startling and painful" and "terrified" her. *Id.* Bauer then choked her unconscious a second time. *Id.*

According to the declaration, when L.H. again regained consciousness, she "had a terrible pain behind [her] ears," she "tasted blood," her "lip was split," her "whole body hurt," and she "could not even tell if he was having sex with [her]." *Id.* Bauer then punched her repeatedly in the vagina. *Id.* L.H. began "crying and violently shaking." *Id.* Only then did Bauer stop his assault. *Id.* Afterward, Bauer told her that he had punched her in the buttocks while she was unconscious. *Id.* at 32. She also believed that Bauer scratched and punched her face while she was unconscious. *Id.* at 31. Following this attack, L.H. had two black eyes, a swollen jaw and cheekbones, scratches on her face, large bruises on her face, lips, and gums, a large lump on her head, "severe black bruising" in her vaginal area, and multiple bruises to the right side of her buttocks. *Id.* at 32. L.H. also recounted she "threw up violently throughout the day and had severe headaches." *Id.* at 33.

In the afternoon, L.H. went to an emergency room. Medical notes stated she "sustained significant head and facial trauma" and that there were "signs of a basilar skull fracture." *Id.* at 33; *see id.* at 78, 104. They also stated that L.H. had, among other things, "[s]evere headache," "[v]omiting x 2 or more," and "[s]igns of basilar fx (raccoon eyes, Battle's sign)."[4] *Id.* at 78, 104. CT scans then were performed on

---

[4] "Fx" is a common medical abbreviation for fracture. McGraw-Hill Concise Dictionary of Modern Medicine (2002).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

L.H.'s brain, face, and neck. *Id.* at 33. L.H.'s declaration does not state the results of those scans. *See id*. Only the underlying the medical report states that the scan found "[n]o acute fracture." *Id.* at 99.[5] She ultimately "was diagnosed with an acute head injury and assault by manual strangulation." *Id.* at 33; *see also id.* at 72, 79, 98, 105.

L.H. reported the incident to the police and underwent a sexual assault exam. *Id.* at 33-34. Messages attached to the Petition show that in the days after the assault, Bauer was aware that L.H. was injured and repeatedly expressed concern about her health. *Id.* at 82 - 90.

On June 3, 2021, L.H. had a follow-up appointment with a physician. Medical records from that examination attached to the Petition indicate that Bauer had caused a "concussion" and L.H. was experiencing "Residual Sx: HA, dizziness, tinnitus, photophobia, sleepiness, and L jaw pain."[6] *Id.* at 93, 94. The physician noted that while prior CT scans had not identified a fracture, he "[s]uspected residual healing contusion but will r/o undetected Fx on CT." *Id.*[7] In other words, he wanted to rule out a fracture potentially undetected by the prior CT scans. He ordered additional MRI scans of L.H.'s brain and face. *Id.* at 93. The Petition does not include the results of those tests.

**C.     The Athletic Reports on L.H.'s Petition for a Restraining Order**

On June 30, 2021, The Athletic published an article by journalists Brittany Ghiroli and Katie Strang (the "Journalists"), titled "Graphic details, photos emerge in

---

[5]  The Complaint pleads that Defendants had access to the full Petition prior to publication. Defendants do not concede that this is accurate and note that the Article suggests otherwise: the Article refers to the Petition as "67 pages long." Compl. ¶ 35; Palacios Decl. Ex. A. The as-filed Petition is 85 pages long. *See* Palacios Decl. Ex. E. It appears the missing pages are L.H.'s medical records, which had been marked "Confidential" in the court file. Nevertheless, Defendants move to dismiss, as they must, on the basis of the facts alleged in the Complaint.

[6] "Sx" is a common medical abbreviation meaning "symptoms." Dictionary of Modern Medicine, *supra* note 4. "HA" is a common medical abbreviation for "headache." Medical Dictionary for the Health Professions and Nursing (2012).

[7] "r/o" is a common medical abbreviation meaning "rule out." McGraw-Hill Concise Dictionary of Modern Medicine (2002).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

restraining order filed against Dodgers pitcher Trevor Bauer." Compl. ¶ 35; Palacios Decl. Ex. A. The Article closely tracks the allegations in L.H.'s declaration. It states that "the woman said . . . Bauer punch[ed] her in the face, vagina, and buttocks, st[uck] his fingers down her throat, . . . strangl[ed] her to the point where she lost consciousness multiple times," and engaged in sex with her while she was unconscious. Palacios Decl. Ex. A at 9. The Article further reports that in "the woman's declaration, signed under penalty of perjury of California state laws, she said that her medical notes state that she had 'significant head and facial trauma' and that there were signs of basilar skull fracture." *Id.* Roughly nineteen paragraphs later, the Article states: "[L.H.] said she underwent rapid CT scans for her brain, face and neck." *Id.* at 11.

The Article also explains that the Petition was *ex parte*, meaning Bauer had not yet had an opportunity to defend himself in court. The Athletic, however, sought and published a response from Bauer. In a statement made through his agent, Bauer did not deny that he had punched L.H. in the head, vagina, or buttocks, choked her unconscious, or caused symptoms of a fractured skull. Instead, he claimed these acts were "100% consensual," and that he possessed text messages from L.H. "asking for 'rough' sexual encounters involving requests to be 'choked out' and slapped in the face." *Id.* at 10.

**D.     The Knight Tweets**

Defendant Knight, then a journalist for The Athletic, maintains an active personal Twitter account (@molly_knight). Before L.H. filed her Petition, Knight had written Athletic articles critical of Bauer and what many saw as his inappropriate behavior towards women. Compl. ¶¶ 26, 31; *see* Palacios Decl. Exs. I, J. However, Knight did not author the Article, nor does Bauer allege Knight wrote any article about L.H.'s allegations. *See* Compl. ¶¶ 3, 40.

On July 1, 2021, after the news broke about L.H.'s Petition, Knight posted some tweets in reaction to the allegations. *Id.* ¶¶ 63 n.23, 126 (Palacios Decl. Ex. N).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  She criticized the Dodgers for "not [being] concerned" about prior complaints of
2  online harassment against Bauer, and opined that, in light of the "horrific allegations
3  of sexual and physical assault," the Dodgers should not permit Bauer to play that
4  weekend. Palacios Decl. Ex. N. Around 9 p.m., she ended by stating that she was
5  "too angry to keep tweeting about this." *Id.*

6        On July 2, 2021, a third-party Twitter user, "Rusty Firewater," commented on
7  a USA Today article about the police investigation into Bauer. In his post, Firewater
8  opined that "[i]f indeed [Bauer] has text messages from [L.H.] agreeing to rough sex,
9  I don't know how they have a case. Of course she's going to have bruises and black
10  eyes. That's part and parcel of rough sex." *See id.* Ex. B. Knight replied to
11  Firewater's messages by posting the three Tweets at issue in this lawsuit. As the
12  Tweets show, Knight found Firewater's (and by extension, Bauer's) conception of
13  "consent" repugnant.

14        Knight's first Tweet responds directly to Firewater by curtly stating, in full:
15  "Not possible to consent to a fractured skull." *Id.* Just minutes later, Knight issued the
16  second and third Tweets (*Id.* Exs. C, D):



24        The next day, Knight posted some more tweets about the controversy, saying
25  that, by allowing Bauer to play, the Dodgers "put their fanbase into a civil war of
26  'gotta hear all the facts' and 'get the monster off my team,'" which was "such a shitty
27  thing for their fans to go through right now." *Id.* Ex. O.

28

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**E.     Bauer Contacts The Athletic**

Bauer alleges that, after the Article was published, Bauer contacted The Athletic and provided a full copy of L.H.'s Petition, including her medical records. Compl. ¶ 56. Bauer's Complaint does not specify when, how, or to whom this contact was made. *Id.* Following receipt of the information, Emma Span, an editor at The Athletic, responded to Bauer, stating, among other things, that "[h]aving looked over the records, we believe our story is accurate as currently phrased." *Id.* ¶ 57 (emphasis omitted). Bauer's attorneys then sent a "demand letter" to The Athletic. *Id.* ¶ 58. On July 3, 2021, The Athletic revised the Article to include the following statement:

> (***Update***: After publication, Trevor Bauer's representatives emphasized that medical records showed that while the woman was initially diagnosed with signs of a basilar skull fracture, a subsequent CT scan found no acute fracture.)

*Id.*; Palacios Decl. Ex. A at 9.

**F.     This Action**

On March 29, 2022, Bauer commenced this action, asserting one count of defamation per se against The Athletic relating to the Article, and another count of defamation per se against Molly Knight (and The Athletic, as her purported employer) relating to the Tweets.[8]

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a

---

[8] The Complaint pleads that after the Article's publication, the Los Angeles Superior Court held a hearing on L.H.'s Petition and "found that [L.H.] consented to her acts with Mr. Bauer" and *for that reason*, "Mr. Bauer had not assaulted or abused [L.H.]." Compl. ¶ 73. However, neither this result nor the hearing is relevant to the legal issues in this case. *See infra* note 11.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sheer possibility that a defendant has acted unlawfully" and is met only when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court "must accept as true all of the [factual] allegations contained in the complaint," it need not accept its "legal conclusions." *Id.* Neither "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, nor "conclusory allegations of law and unwarranted inferences" are sufficient avoid dismissal pursuant to Rule 12(b)(6), *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (cleaned up).

When ruling on a motion to dismiss, "courts must consider a complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *see generally* Defs' Req. for Judicial Notice.

## IV.   BAUER'S FIRST DEFAMATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

### A.   California's Retraction Statute Bars Bauer's First Defamation Claim

As a threshold matter, Bauer's claim against The Athletic must be dismissed because he has failed to plead adequate compliance with California's retraction statute. The retraction statute requires a plaintiff suing a news organization for defamation to demand a correction before bringing a lawsuit for general damages. Cal. Civ. Code § 48a(a), (d)(5). Specifically, a plaintiff must serve, "upon the publisher at the place of publication," "a written notice specifying the statements claimed to be libelous and demanding that those statements be corrected" within 20 days of learning of the publication. *Id.* § 48a(a). These requirements are strictly applied. *See, e.g.*, *Shahid Buttar for Cong. Comm. v. Hearst Commc'n, Inc.* ("*Buttar*"), 2022 WL 1215307, at *11 (N.D. Cal. Apr. 25, 2022) (serving written demand on reporter is insufficient); *Leeb v. Delong*, 198 Cal. App. 3d 47, 52 n.2 (1988) (serving written demand on editor is insufficient). Unless a correction is *both*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

demanded and not published, the plaintiff may recover only "special damages," *i.e.*, damages "to his or her property, business, trade, profession, or occupation, . . . and no other." Cal. Civ. Code § 48a(d)(2). Absent allegations of special damages, the claim must be dismissed. *See Buttar*, 2022 WL 1215307, at *11 (dismissing complaint under Rule 12(b)(6) and anti-SLAPP statute for failure to plead requirements of retraction statute or special damages); *Anschutz Ent. Grp., Inc. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009) (complaint stricken under anti-SLAPP statute where plaintiff failed to allege or prove adequate compliance with corrections statute and complaint contained only general allegations of special damages).

Bauer's Complaint does not satisfy the strict requirements of the retraction statute. *See* Compl. ¶¶ 56-59. The Complaint asserts that he contacted The Athletic, provided L.H.'s medical records, and explained there was no fracture, *id.* ¶ 56, but it does not specify how that "contact" was made (*e.g.*, by telephone or otherwise), who Bauer contacted, or whether he actually requested a correction. Bauer also alleges that he sent "a demand letter." *Id.* ¶ 58. Again, Bauer does not specify what that letter said or to whom it was sent. Instead, Bauer pleads only that The Athletic failed to correct. *Id.* ¶¶ 58-59. This is not sufficient. *See, e.g.*, *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1081 (S.D. Cal. 2021) (Section 48a not satisfied where plaintiff failed to allege that he "served a correction . . . upon the publisher"—only that defendant "failed to correct"). But even if Bauer's allegations were sufficient, The Athletic *did* update the Article to state that a "subsequent CT scan found no acute fracture"—the very fact upon which Bauer bases his claim.

As a result, Bauer's Complaint is legally sufficient only if he pleads special damages. But he does not even try. Bauer alleges that he suffered reputational damage, "anguish, humiliation, embarrassment, and financial loss," Compl. ¶ 110, but these are general damages, not special damages, Cal. Civ. Code § 48a(d)(1). His purported "financial loss" is not pleaded with *any* specificity. That is fatal to his claim. *See Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 (2d Cir. 2022)

(affirming dismissal pursuant to Cal. Civ. Code § 48a for failure to "allege special damages with the necessary specificity"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998) (former MLB player failed to prove special damages because expenses do not per se constitute special damages); *Martin v. Wells Fargo Bank*, 2018 WL 6333688, at *2 (C.D. Cal. Jan. 18, 2018) (complaint dismissed for failure to plead special damages where he provided no estimation of "pecuniary loss suffered, and the opportunities allegedly lost [were] impermissibly vague").

Having failed to meet the retraction statute's requirements or to adequately plead special damages, Bauer's first claim should be dismissed on this basis alone.

**B.    The Article Is Privileged as a Fair and True Report of L.H.'s Petition**

To "facilitate the public's supervisory role over government," *Sipple v. Foundation for Nat. Progress*, 71 Cal. App. 4th 226, 241 (1999), California law provides absolute protection for "fair and true" reports of official proceedings and records "regardless of the defendants' motive for reporting" them, *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016); *see also* Cal. Civ. Code § 47(d); *McClatchy Newspapers, Inc. v. Superior Ct.*, 189 Cal. App. 3d 961, 974 (1987) (privilege applies even when "media publish[es] an accurate report of a statement they know to be false"). The privilege is a broad one: doubts "are to be resolved in favor of a finding of privilege." *Tiedemann v. Superior Ct.*, 83 Cal. App. 3d 918, 925 (1978).

It is well-settled that the privilege applies where, as here, a news organization reports on allegations made in a court filing. *See Healthsmart*, 7 Cal. App. 5th at 434. All that is required is that the report accurately convey the "gist" or "sting" of the court filing, "as measured by [its] impact on the average reader." *Crane v. Ariz. Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992). Whether the allegations in the court filing are true or false is irrelevant. *See Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1436-37 (9th Cir. 1992); *Healthsmart*, 7 Cal. App. 5th at 434. The only question is whether the news organization has fairly described what is in the court filing, and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

when "there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report," the question is one of law. *Healthsmart*, 7 Cal. App. 5th at 431; *see, e.g.*, *Kilgore v. Younger*, 30 Cal. 3d 770, 777 (1982) (affirming dismissal at pleading stage on grounds that newspaper article was fair and true report of public meeting).

Here, because the statement at issue is a *verbatim quote* of the filed Petition, it is indisputably a fair and true report. *See McClatchy Newspapers*, 189 Cal. App. 3d at 976-77 (explaining that a "verbatim quote" "epitomizes the meaning of 'fair and true report'"). The Article states: "In the woman's declaration, . . . she said that her medical notes state that she had 'significant head and facial trauma' and that there were signs of basilar skull fracture." Palacios Decl. Ex. A at 9. That faithfully reflects L.H.'s declaration, which states: "The medical notes further state that I 'sustained significant head and facial trauma' and that there were signs of a basilar skull fracture." Compl. ¶ 34; Palacios Decl. Ex. E at 33.

Unable to dispute that The Athletic truthfully and fairly reported the allegations in the Petition, Bauer is left to allege that The Athletic was required to report additional facts from the attached exhibits—specifically, the results of a CT scan. *See* Compl. ¶¶ 97-98. But his argument is based on flawed assumptions and a misunderstanding of the law. First, Bauer's claim rests on an unreasonable implication: that if a patient "presents with symptoms" of a skull fracture, that means the patient has a skull fracture, not just symptoms. As set out further below, that implication is not sustainable. *See infra* section IV.C.1. Second, Bauer wrongly asserts that the Article omitted the outcome of the CT scans. In fact, the Article reports that L.H. "said in her declaration she was diagnosed with an acute head injury and assault by manual strangulation." Palacios Decl. Ex. A at 11. That is precisely the "final diagnosis" recorded in L.H.'s medical records, even after, and taking into account, the results of the CT scan. *See id.* Ex. E at 79 ("Final diagnoses: Acute head injury. Assault by manual strangulation.").

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Third, the Petition does not support the dispositive weight Bauer assigns to the CT scans. Specifically, at a follow up appointment on June 3, 2021, L.H.'s doctor recorded his concern that the emergency room CT scans might not have been accurate, and he ordered MRI scans of L.H.'s brain and face to rule out a potentially undetected fracture. *See id.* Ex. E at 94 ("Suspected residual healing contusion but will r/o undetected Fx on CT."). The Petition therefore suggests it was an open question whether L.H. suffered any fractures. To the extent Bauer claims that the Petition proves there was no skull fracture and the Article falsely implied there was, he is simply wrong. The Petition itself left open the possibility that there was a fracture, just as he claims the Article did.

Finally, Bauer cannot dispute that the Article captures the gist and sting of the Petition: that Bauer had been accused of two violent, non-consensual sexual assaults.[9] That is all the privilege requires. A news organization is not required to report every detail of the court record. *See Crane*, 972 F.2d at 1522 (privilege not overcome by omission of details that would "not materially alter the tenor of the story"). Here, no reasonable reader, having learned of the allegation that Bauer repeatedly hit a woman hard enough that she had an "acute head injury," wounds to her face, and extensive bruising to her genitals, would view the allegations differently if they learned a CT scan had ruled out a basilar fracture. *See, e.g.*, *Carver*, 135 Cal. App. 4th at 352 (because the "sting" was that plaintiff "received an unusually large number" of medical board complaints, a report that he had 22 was not a substantial deviation from 6); *see also infra* section IV.C.2. It is Bauer's violent actions—not the parsing of L.H.'s test results—that is the heart of the Petition. *See Colt v. Freedom Commc'n, Inc.*, 109 Cal. App. 4th 1551, 1558 (2003) (refusing to "engage in a detailed parsing

---

[9] The headlines of the articles relied on in Bauer's Complaint reinforce that the Petition's reputational sting was the allegation of sexual assault. *See* Compl. ¶¶ 50-51 nn. 20-22 (listing articles titled "*Trevor Bauer Is Accused of Sexual Assault*," "*Trevor Bauer Sex Assault Allegations Detailed in Graphic Report; Pitcher Denies Claims*," and "*On the Trevor Bauer Allegations and the Need for Better Consent Education*").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of words, phrases, and sentences to note the subtle differences between their misconduct and that noted in the articles"). Including the results of one CT scan would not have materially changed the meaning of the Article and, on that basis alone, the privilege bars Bauer's claim.

## C.   Bauer's Defamation by Implication Claim Fails

Even if the fair report privilege were not to apply, Bauer's claim against The Athletic still fails as a matter of law. As a preliminary matter, because Bauer does not allege that the Article explicitly says he fractured L.H.'s skull, but rather implies it, Bauer's claim is one for defamation by implication. *See, e.g.*, *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803-04 (1980). Bauer thus must show: "(1) [his] interpretation of the statement [in the Article] is reasonable; (2) the implication or implications to be drawn convey defamatory facts, not opinions; (3) the challenged implications are not 'substantially true'; and (4) the identified reasonable implications could also be reasonably deemed defamatory." *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019) (cleaned up). Additionally, as Bauer is indisputably a public figure, the First Amendment places the burden on Bauer to show that Defendants published the defamatory statements with actual malice. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Vogel*, 127 Cal. App. 4th at 1017.

### 1.   The Alleged Implication Is Unreasonable as a Matter of Law

Where a plaintiff seeks to maintain an action for defamation by implication, the plaintiff must demonstrate, first, that his interpretation of the statement is reasonable. *Issa*, 31 Cal. App. 5th at 707. "Thus, a plaintiff may not construct an actionable statement by reading whatever implication it wishes into the defendants' words." *Id.* (quotation and citation omitted). "Whether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court." *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995). "Just as the court must refrain from a 'hair-splitting analysis' of what is said in an

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

article to find an innocent meaning, so must it refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'" *Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (quoting *Forsher*, 26 Cal. 3d at 803).

The implication Bauer draws is premised on a series of self-serving assumptions. First, Bauer assumes that reporting an individual has "signs" or symptoms of a medical condition means that an individual has that condition. That is plainly untrue as a matter of common sense. And if there had been no ambiguity about L.H.'s condition, diagnostic tests would have been unnecessary. Next, Bauer assumes that, by referencing CT scans but omitting the results of the diagnostic tests, the Article implies a positive result: "the clear implication was that the CT scans confirmed the skull fracture." Compl. ¶ 5. Rather, it suggests the opposite: Had the results confirmed a skull fracture, there would have been no reason to report only that L.H. had "signs" of a basilar fracture—the Article would have simply reported that she *had* a skull fracture. Further undermining Bauer's claim is that, unlike what Bauer misleadingly suggests, the statement that L.H. said she had signs of a skull fracture is not immediately followed by the statement that CT scans were performed on her. In fact, the latter statement occurs *nineteen paragraphs later*. *See* Palacios Decl. Ex. A at 9, 11. That "some person might, with extra sensitive perception," understand the CT scan statement to imply anything about the skull fracture statement made nineteen paragraphs earlier is not sufficient to meet this element as a matter of law. *Forsher*, 26 Cal. 3d at 805-06 (upholding dismissal of implication claim at pleading stage). Finally, Bauer wrongly suggests the Article concealed the outcome of the scan. But, as set out above, it truthfully reports L.H.'s "final diagnosis" after those CT scans: she "was diagnosed with an acute head injury and assault by manual strangulation." *See* Palacios Decl. Exs. A at 9, E at 79.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**2.    The Article Is Substantially True**

Even if Bauer's alleged implication were reasonable, he has not and cannot show that the Article, complete with his proffered implication, is not "substantially true." In determining substantial truth, it "is well settled that a defendant is not required in an action of libel to justify every word of the alleged defamatory matter." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28 (2007) (citation omitted). "[I]t is sufficient if the *substance* of the charge be proved true . . . . Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Vogel*, 127 Cal. App. 4th at 1021. The key question is whether the allegedly defamatory statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)).

Here, the pleaded—*i.e.*, conceded—truth is that Bauer, with L.H.'s consent, hit L.H. during sex so severely he caused serious injuries, including the symptoms of a skull fracture. The only difference between the pleaded truth and what Bauer claims is defamatory is his assertion that a skull fracture was not one of the many injuries he inflicted on L.H. But misstating such a secondary detail would not render the Article substantially false; the article would still be seen as truthfully capturing that Bauer had been violent. *See, e.g.*, *Jackson*, 10 Cal. App. 5th at 1262 (statements that plaintiff had cosmetic surgery on her face were substantially true even though she only had plastic surgery on her body); *Carver*, 135 Cal. App. 4th at 352 (article misstating number of malpractice complaints against doctor did not materially change "gist" of article).

To accept Bauer's claim, the Court would need to find that (a) the Article falsely implied L.H. had a skull fracture and (b) for that reason—and that reason alone—readers thought less of Bauer upon finishing the Article. In other words, in Bauer's mind, had The Athletic just not mentioned the fracture symptoms, readers

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 │ would have continued to have high regard for him. The theory is as preposterous as it

2 │ sounds.

3 │     Bauer's Complaint does not deny that he "punch[ed L.H.] in the face, vagina,

4 │ and buttocks, [stuck] his fingers down her throat, and strangl[ed] her to the point

5 │ where she lost consciousness multiple times." Palacios Decl. Ex. A at 9. He does not

6 │ dispute that "she suffered injuries," "including two black eyes, a bloodied swollen

7 │ lip, significant bruising and scratching to one side of her face," and that she had

8 │ "significant head and facial trauma." *Id.* He does not contest the truth of medical

9 │ records showing that she suffered dizziness, repeated vomiting, vision changes, pain

10 │ behind her ears, and PTSD, which caused doctors to believe he might have fractured

11 │ bones in her head or face. And his own statement to the press confirms that he knew

12 │ L.H. "sought medical care for a concussion." *Id.* at 10. Although Bauer asserted that

13 │ all this was "100% consensual," *id.*, in short, his Complaint admits that for sexual

14 │ pleasure, he battered a woman so badly that it left her with extensive, serious injuries.

15 │     Bauer's own admitted conduct is so significant that whether it ultimately

16 │ caused a skull fracture (rather than a concussion, vomiting, facial wounds, "raccoon

17 │ eyes" and other injuries symptomatic of such a fracture) does not materially alter the

18 │ "gist" of the allegations. Bauer's failure to plead any false statement, direct or

19 │ implied, that "would have a different effect on the mind of the reader from that which

20 │ the pleaded truth would have produced" is fatal to his claim. *Masson*, 501 U.S. at

21 │ 517.

22 │    **3.**   **Bauer Fails to Show the Purportedly Defamatory Implication Was**

23 │       **Made with Actual Malice**

24 │     Finally, Bauer's claim against The Athletic fails because he has not shown and

25 │ cannot show that the unstated implication in the Article was made with actual malice.

26 │ In a claim for defamation involving a public figure or matter of public concern, actual

27 │ malice requires a plaintiff to show, first, that the defendant "intended to convey the

28 │

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defamatory impression."[10] *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002); *see also Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1187 (9th Cir. 2001) ("[T]here is no actual malice where journalists unknowingly mislead the public."); *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990) (district court improperly assumed that defendant journalists intended to convey a defamatory implication).

Second, actual malice requires a plaintiff to show that a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984) (citation omitted). Reckless disregard means the defendant "must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (cleaned up). This showing must be made to a "clear and convincing" standard even at the pleading stage: Bauer must allege facts which could show actual malice, not "general allegations that a defendant should have known or should have investigated the truth." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

The inquiry focuses on the state of mind of the "individual responsible for publication," not the organization as a whole. *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017). Thus, it is not enough to plead that the Journalists knew Bauer had not fractured L.H.'s skull. It is not enough to plead that the Article can be read to imply that he had fractured her skull. Bauer must show to a clear and convincing standard that the Journalists knew

---

[10] The subject of both the Article and the Tweets, allegations of sexual violence, is a matter of public concern, and Bauer, one of the most famous and "highest paid" baseball players in the country, Compl. ¶ 22, is a public figure. The actual malice standard accordingly applies to Bauer's claims. *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) (famous baseball player was public figure); *Carney v. Santa Cruz Women Against Rape*, 221 Cal. App. 3d 1009, 1021 (1990) ("violence against women is of pressing public concern" for purposes of defamation).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  and intended the implication, knew that it was false or entertained serious doubts
2  about its falsity, and published anyway.

3      That is a high bar, and Bauer does not come anywhere close to making this
4  showing. First, Bauer attempts to plead actual malice by citing numerous *other*
5  Athletic articles, claiming that they demonstrate a "harassment campaign" against
6  him. Compl. ¶¶ 16-33. Even a cursory review of those articles demonstrates that they
7  are routine reporting and editorial commentary on Bauer's career and public
8  controversies. *See* Palacios Decl. Exs. F-M. None of the purportedly hostile articles
9  were authored by the Journalists; they are not probative of their state of mind at the
10 time of publication. And, in any event, "the actual malice standard is not satisfied
11 merely through a showing of ill will or 'malice' in the ordinary sense of the term."
12 *Harte-Hanks Comm'ns*, 491 U.S. at 667. These articles do nothing to show that the
13 Journalists intended to suggest Bauer fractured L.H.'s skull, or that they knew, or
14 subjectively entertained doubts about, whether L.H.'s skull was fractured.

15     Second, Bauer alleges actual malice is shown because The Athletic ignored the
16 medical records and results of the CT scans. Compl. ¶¶ 53, 105. Not so. The Article
17 included the final diagnosis recorded in L.H.'s medical records. *See supra* at 12.
18 Bauer's argument also assumes that the medical records contradict the Article, which
19 they do not. Rather, as discussed above, the medical records and Petition are unclear
20 about whether L.H. suffered a skull fracture. *See id.* at 13. Thus, these arguments fail.

21     Finally, Bauer alleges actual malice is shown by The Athletic's slow and
22 "meagre" revision. Compl. ¶¶ 57-59. But a failure to promptly correct is not evidence
23 of actual malice. *Sullivan*, 376 U.S. at 286; *McFarlane v. Sheridan Square Press,*
24 *Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996). In any event, the facts are at odds with
25 Bauer's argument. As pleaded, The Athletic refused to correct because it believed the
26 Article to be accurate. *See* Compl. ¶ 57. And the purportedly inadequate revision that
27 The Athletic ultimately made is substantially the same as that of other publications
28

19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

cited in the Complaint and as that advocated by Bauer himself. *See* Compl. ¶ 58. Thus, Bauer has failed to plausibly allege actual malice.[11]

## V.   BAUER'S SECOND DEFAMATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

### A.   The Tweets Do Not Assert Objective Facts

Bauer's second claim alleges that the three Knight Tweets made the same defamatory implication[12]—that Bauer fractured L.H.'s skull—as the Article. While this claim should accordingly be dismissed for many of the same reasons, it is also "foreclosed by the First Amendment" because no "reasonable factfinder could conclude that the . . . statement[s] impl[y] an assertion of objective fact." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (affirming dismissal at pleading stage).

In making this determination, courts consider "the totality of the circumstances" in which the statement was made, by evaluating three factors: (a) "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work"; (b) "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation"; and (c) whether "the statement itself is sufficiently factual to be susceptible of being proved true or false." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (citations omitted). Under this test, the "context in which the statement appears is paramount . . . and in some cases," like here, "it can

---

[11] In the Complaint, Bauer includes allegations regarding events after the publication of the Article and Tweets. These allegations are irrelevant to actual malice. *See Buttar*, 2022 WL 1215307, at *9 (email sent after publication of an article could not serve as a basis for finding actual malice in the publication of the article).

[12] Bauer's second claim is also one for implication because the Tweets do not "assert[] that Mr. Bauer fractured the Complainant's skull." Compl. ¶ 121; Palacios Decl. Exs. B-D. In fact, they do not even reference Bauer. It is only by *implication* that they could be construed as being "of and concerning" Bauer and about Bauer fracturing L.H.'s skull. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

be dispositive." *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005).

Here, all three factors clearly demonstrate that a reasonable reader would have understood that, as part of the cut and thrust of ordinary Twitter debate, Knight was expressing her strongly-held views on sexual violence, not reporting factual information about a medical case.

### 1.    The Broad Context of the Tweets

The first factor, the "broad context" in which the Tweets were published, strongly suggests that the Tweets are non-actionable. In conducting this analysis, a court "first considers the medium in which the statement was made." *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1049 (S.D. Cal. 2020). Here, that medium is Twitter, "a place 'where readers expect to see strongly worded opinions rather than objective facts.'" *Greenspan v. Qazi*, 2021 WL 2577526, at *6 (N.D. Cal. June 23, 2021). Social media, like the blogs that came before it, "inherently suggest[s] that statements made there are not likely provable assertions of fact." *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1223 (D. Or. 2011) (collecting cases).

Further, the Tweets were made in the context of an ongoing, public debate. Statements made as part of a public debate are less likely to be viewed as assertions of fact because the audience "anticipate[s] efforts . . . to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Info. Control Corp. v. Genesis One Comp. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (citations omitted); *see also Herring Networks*, 8 F.4th at 1157. Here, the public debate was most immediately about the Petition and Bauer's response. But it was rooted in a pre-existing controversy over Bauer's online antics and conduct towards women. *See, e.g.*, Compl. ¶¶ 25-30; Palacios Decl. Exs. I, J, Q, R (detailing various controversies). And both controversies implicate evergreen debates about intimate partner violence in sports and the definition of consent in sexual relationships. Courts are particularly cautious about treating as actionable a "personal perspective" on a matter of "a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

controversial occurrence" because public debate is "a vital part of our democracy." *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995). Both Knight and Bauer have previously engaged in these debates via social media, with Knight sharply critical of Bauer's attitude and conduct—particularly towards women—and Bauer often defiant and quick to engage his critics. *See, e.g.*, Palacios Decl. Ex. R. That is precisely the kind of "heated debate on the internet" that signals to readers they are about to hear opinions, not objective facts. *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1106 (N.D. Cal. 1999).

Finally, Knight's other posts around the time of the Tweets reinforced that she was expressing personal views. *See generally supra* section II.D. The day before, she said she was "too angry to keep tweeting about this." Compl. ¶ 63. The next day she used colorful and hyperbolic language to describe the impact of Bauer's situation. *See* Palacios Decl. Ex. O ("The Dodgers have put their fanbase into a civil war"; "get this monster off my team"; "[s]uch a shitty thing for their fans to go through"). That Knight did not try to hide her feelings about the controversy further signaled to readers she was expressing opinions, not objective facts. *See, e.g.*, *Citcon USA, LLC v. RiverPay Inc.*, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022) (blog post that "did not try to hide the fact that it is a collection of the author's feelings of anger" and used "crass, hyperbolic, and emotional language" was non-actionable opinion).

## 2.    The Specific Context of the Tweets

The second factor, the "specific context and content of the statements," further reinforces that the Tweets are non-actionable opinion. The Tweets were made in the specific context of a quick-fire rebuttal to a comment that Knight disagreed with. Another Twitter user speculated that, if Bauer had text messages from L.H. consenting to rough sex, Bauer would be exonerated. *See* Palacios Decl. Ex. B ("bruises and black eyes" are "part and parcel of rough sex"). Knight fired back: "Not possible to consent to a fractured skull." The second and third Tweets, posted within three minutes of the first, make similar points. *See id.* Exs. C, D. This kind of quick

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

repartee, using incomplete sentences and short pithy phrases, further signaled that the Tweets were not objective assertions of fact. *See, e.g.*, *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267, 1269 (C.D. Cal. 2001) ("short-hand phrases" and other "linguistic informalit[ies]" negate assertions of fact because "they are not generally found in fact-based documents").

The specific context also signaled to readers that Knight was commenting on public allegations, not reporting new facts. The comment that prompted Knight's first Tweet was itself commenting on a news article about the Petition. *See* Palacios Decl. Ex. B. In other words, the Tweets "were based on facts available" to the public that led to differing interpretations and provided "only [Knight's] interpretation of [these] publicly known facts." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1122 (C.D. Cal. 1998); *see also In re Yagman*, 796 F.2d 1165, 1173-74 (9th Cir. 1986).

### 3.     The Tweets Cannot Be Proven True or False

Under the last factor, a court considers "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Underwager*, 69 F.3d at 366. The Tweets offered an assertion about what constitutes "consent": specifically, that it is not possible to consent to extreme violence. That is a moral or legal question about which "reasonable minds can and do differ." *Cochran*, 58 F. Supp. 2d at 1125. The Superior Court apparently concluded consent could be given. Compl. ¶ 73. Other courts have held very differently. *See, e.g.*, *State v. Van*, 688 N.W.2d 600, 614-15 (Neb. 2004) (collecting cases holding that, as a matter of public policy, consent cannot be given to assault, even within a BDSM relationship). Courts have repeatedly held that value-laden judgments and legal interpretations are not susceptible to objective proof. *See, e.g.*, *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002); *Cochran*, 58 F. Supp. 2d at 1125.

In an effort to plead around that well-settled law, Bauer asserts that the Tweets implied facts. But the language of the Tweets undercuts this. They do not refer to Bauer: they refer to the debate on consent. They use incomplete sentences, loose and

figurative language, and colloquially address themselves directly to the reader ("Saying you'd like"). Combined with the wider and specific contexts, these factors collectively "negate the impression that the statement is an assertion of objective fact." *Herring Networks*, 8 F.4th at 1160 (statement that plaintiff "really literally is paid Russian propaganda" was verifiable, but context rendered it opinion); *Nicosia*, 72 F. Supp. 2d at 1102 (statements that plaintiff "killed Jan Kerouac" and committed "embezzlement" were verifiable, but context rendered them opinion). For the reasons set out above, all three factors demonstrate that the Tweets are opinion, and Bauer's claim fails as a matter of law.

**B.     The Alleged Implications of the Tweets are Substantially True**

Bauer alleges that, as with the Article, the Tweets implied he had fractured L.H.'s skull. Compl. ¶ 47. As set out above in connection with the Article, saying that Bauer "cracked" L.H.'s skull would not have a different effect on the mind of the reader than the pleaded truth: that Bauer hit L.H. so severely he caused serious injuries, including symptoms of a fractured skull. *See supra* section IV.C.2 and cases cited therein. Accordingly, even if the pleaded implication were reasonable, Bauer's second claim fails because he cannot show it is false as a matter of law.

**C.     Bauer Fails to Sufficiently Allege Actual Malice**

Finally, Bauer's second claim fails because Bauer has not adequately pleaded actual malice. Here too, Bauer argues that articles and tweets by Knight evidence a "vendetta" against Bauer. Compl. ¶¶ 25-32, 62. Aside from badly misconstruing these publications,[13] these allegations fail because actual malice "has nothing to do with bad motive or ill will." *Harte-Hanks Comm'ns*, 491 U.S. at 666 n.7.

---

[13] Bauer alleges that these articles make "false and misleading claims" about him, Compl. ¶ 63, but nothing in the articles could reasonably be described as false or misleading. For example, even the Complaint shows Knight's characterization of Bauer as telling his followers to "go after" a New York Daily News writer who then endured death threats and holocaust jokes is a fair characterization of what Bauer actually said. *Id.* ¶¶ 26-28; Palacios Decl. Ex. I.

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Bauer also claims that Knight published with actual malice because L.H.'s medical records were "publicly available, and possessed by Ms. Knight's employer." Compl. ¶ 120. But the public availability of documents is not sufficient. *Wynn*, 75 F. Supp. 3d at 1240. Nor is it sufficient to allege that The Athletic had the medical records: "the speaker [her]self" must "h[old] the requisite state of mind." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018. As Knight is not the author of the Article, none of these allegations show that Knight had possession of or knew the contents of L.H.'s medical records. What remains is mere conclusory allegations that cannot survive the pleading stage. Compl. ¶¶ 124-27.

## VI.   CONCLUSION

For the foregoing reasons, Bauer's Complaint should be dismissed with prejudice.


DATED: May 31, 2022                     DAVIS WRIGHT TREMAINE LLP
                                        DIANA PALACIOS
                                        ERIC H. LAMM

                                        By:   */s/ Diana Palacios*
                                              Diana Palacios

                                        Attorneys for Defendants THE
                                        ATHLETIC MEDIA COMPANY &
                                        MOLLY KNIGHT

MOTION TO DISMISS
4858-3676-9570v.5 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899