Diana Palacios (State Bar No. 290923)
  dianapalacios@dwt.com
Eric H. Lamm (State Bar No. 324153)
  ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:   (213) 633-6899

Attorneys for Defendants
THE ATHLETIC MEDIA
COMPANY and MOLLY KNIGHT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>                    Plaintiff,<br><br>        vs.<br><br>THE ATHLETIC MEDIA COMPANY<br>and MOLLY KNIGHT,<br><br>                    Defendants. | Case No. 2:22-cv-02062-MWF-AGR<br>Assigned for all purposes to the Hon.<br>Michael W. Fitzgerald<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANTS THE ATHLETIC MEDIA COMPANY AND MOLLY KNIGHT TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:     August 29, 2022<br>Time:     10:00 a.m.<br>Dept.:    5A<br><br>Action Filed: March 29, 2022 |

# **TABLE OF CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT ........................................................ 1

II.  BAUER'S FIRST DEFAMATION CLAIM SHOULD BE
     DISMISSED WITH PREJUDICE ................................................... 2

     A.   California's Retraction Statute Bars Bauer's First Defamation
          Claim ................................................................. 2

     B.   The Article Is Privileged as a Fair and True Report of L.H.'s
          Petition .............................................................. 4

     C.   Bauer Improperly Relies on, and Mischaracterizes, the Superior
          Court Proceedings ..................................................... 8

     D.   Bauer's Defamation by Implication Claim Fails ........................ 10

          1.   The Article Does Not Reasonably Imply that Bauer
               Fractured L.H.'s Skull ......................................... 10

          2.   Bauer Has Failed to Show the Implication is False and
               Defamatory ..................................................... 11

          3.   Bauer Has Failed Adequately to Plead Actual Malice ............. 12

III. BAUER'S SECOND DEFAMATION CLAIM SHOULD BE
     DISMISSED WITH PREJUDICE ................................................... 14

     A.   The Tweets Do Not Assert Objective Facts About Bauer ................. 14

     B.   The Alleged Implications of the Tweets are Substantially True ........ 19

     C.   Bauer Fails to Sufficiently Allege Actual Malice as to Knight ........ 19

IV.  CONCLUSION ................................................................. 21

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anschutz Entmt. Grp., Inc. v. Snepp*,
    171 Cal. App. 4th 598 (2009) ............................................................. 4

*Argentieri v. Zuckerberg*,
    8 Cal. App. 5th 768 (2017) ........................................................... 8, 9

*Bates v. Campbell*,
    213 Cal. 438 (1931) ...................................................................... 11

*BDO USA, LLP v. EverGlade Global, Inc.*,
    No. 2021-0244, 2022 WL 41416 (Del. Ch. Jan. 5, 2022) ................... 18

*Boulger v. Woods*,
    917 F.3d 471 (6th Cir. 2019) ......................................................... 18

*Cadena v. American Honda Motors Co., Inc.*,
    No. CV 18-4007, 2019 WL 6646700 (C.D. Cal. July 17, 2019) ......... 3

*Campanelli v. Regents of Univ. of Cal.*,
    44 Cal. App. 4th 572 (1996) ......................................................... 12

*Carver v. Bonds*,
    135 Cal. App. 4th 328 (2005) ....................................................... 12

*Christian Research Institute v. Alnor*,
    148 Cal. App. 4th 71 (2007) ......................................................... 20

*Cochran v. NYP Holdgs., Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) ....................................... 15, 17

*Crane v. Ariz. Republic*,
    972 F.2d 1511 (9th Cir. 1992) .................................................. 4, 5, 8

*Doe v. Cahill*,
    884 A.2d 451 (Del. 2005) ............................................................. 16

*Dorsey v. National Enquirer, Inc.*,
    973 F.2d 1431 (9th Cir. 1992) ........................................................ 8

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Gallagher v. Philipps,*
    563 F. Supp. 3d 1048 (S.D. Cal. 2021)...........................................................2, 8

*Ganske v. Mensch,*
    480 F. Supp. 3d 542 (S.D.N.Y. 2020) ...............................................................18

*GetFugu, Inc. v. Patton Boggs LLP,*
    220 Cal. App. 4th 141 (2013) ...........................................................................15

*Global Telemedia Intern., Inc. v. Doe 1,*
    132 F. Supp. 2d 1261 (C.D. Cal. 2001) .......................................................15, 16

*Gonzalez v. Students for Educ. Reform, Inc.,*
    No. 2:19-cv-03958, 2019 WL 8108732 (C.D. Cal. Oct. 17, 2019) ......................3

*Greenspan v. Qazi,*
    No. 20-cv-03426, 2021 WL 2577526 (N.D. Cal. June 23, 2021) .......................18

*Harte-Hanks Comm'ns, Inc. v. Connaughton,*
    491 U.S. 657 (1989).....................................................................................13, 20

*Issa v. Applegate,*
    31 Cal. App. 5th 689 (2019) ........................................................................10, 19

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP,*
    247 Cal. App. 4th 87 (2016) ...............................................................................5

*Jezzini v. Adolf,*
    No. B292299, 2019 WL 4668008 (Cal. Ct. App. Sept. 25, 2019) .......................7

*Kaelin v. Globe Commc'n Corp.,*
    162 F.3d 1036 (9th Cir. 1998) ...........................................................................10

*Kendall v. Daily News Publ'g Co.,*
    716 F.3d 82 (3d Cir. 2013).................................................................................14

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ...........................................................................17

*Krinsky v. Doe 6,*
    159 Cal. App. 4th 1154 (2008) ..........................................................................16

*Leeb v. Delong,*
    198 Cal. App. 3d 47 (1988) .................................................................................3

iii

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Manzari v Assoc. Newspapers Ltd.*,
   830 F.3d 881 (9th Cir 2016) ................................................................ 14

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ........................................................................... 12

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................. 17

*Nunes v. Cable News Network, Inc.*,
   520 F. Supp. 3d 549 (S.D.N.Y. Feb. 19, 2021) ...................................... 4

*Obsidian Fin. Grp., LLC v. Cox*,
   740 F.3d 1284 (9th Cir. 2014) ............................................................ 16

*People v. Miranda*,
   62 Cal. App. 5th 162 (Cal. Ct. App. 2021) ............................................ 7

*People v. Washington*,
   210 Cal. App. 4th 1042 (2012) ............................................................. 7

*Ponomarenko v. Shapiro*,
   287 F. Supp. 3d 816 (N.D. Cal. 2018) .................................................. 3

*Rapaport v. Barstool Sports, Inc.*,
   No. 18 Civ. 8783, 2021 WL 2635821 (S.D.N.Y. June 25, 2021) ...................... 18

*Reader's Dig. Ass'n v. Superior Ct.*,
   37 Cal. 3d 244 (1984) ........................................................................ 20

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ............................................... 13

*Shahid Buttar for Cong. Comm. v. Hearst Commc'n, Inc.*,
   No. 21-cv-05566, 2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ............... 2, 3, 9

*Sipple v. Found. for Nat. Progress*,
   71 Cal. App. 4th 226 (1999) ................................................................. 5

*Smith v. Santa Rosa Press Democrat*,
   No. C 11-02411, 2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) ..................... 6

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ........................................................................... 21

iv

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ............................................................ 18

*Thomas v. L.A. Times Commc'ns, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002) ............................................. 20

*Torain v. Liu*,
    No. 06 Civ. 5851, 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) ................ 16, 17

*Unsworth v. Musk*,
    No. 2:18-cv-08048, 2019 WL 4543110 (C.D. Cal. May 10, 2019) ................... 18

*Vogel v. Felice*,
    127 Cal. App. 4th 1006 (2005) ......................................................... 19

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) .............................................. 20

## Statutes

California Civil Code § 48a
    (a) .................................................................................... 2, 4
    (d)(1) .................................................................................. 2
    (d)(2) .................................................................................. 2
    (d)(5) .................................................................................. 2

California Penal Code
    § 243(d) ............................................................................ 7, 12
    § 261(a)(4) ............................................................................. 7
    § 12022.7 ............................................................................... 7

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.    SUMMARY OF ARGUMENT

Defendants' Motion to Dismiss ("Motion") demonstrated why, as a matter of law, Trevor Bauer's ("Bauer") Complaint fails to allege properly any cause of action, and nothing in the Opposition changes that conclusion. Indeed, Bauer makes little effort in his Opposition to address several arguments and cases cited by Defendants. Instead, he attempts to amend his Complaint through his Opposition and cites to post-publication proceedings before the California Superior Court.[1] The Court should reject such improper attempts to distract from the issues in this case and should dismiss Bauer's claims.

As discussed in the Motion, Bauer's first claim arising from the story by The Athletic (the "Article") fails for multiple reasons. First, despite Bauer's attempt to now introduce the letters sent to The Athletic, Bauer failed to comply with California's retraction statute or plead any special damages. Second, the Article is privileged because it fairly and accurately reports on a court filing and any proceedings that occurred after the publication are irrelevant. Third, Bauer has failed to show that the Article makes any defamatory implication and even if it did, Bauer has failed to show that the implication is materially false. Finally, Bauer fails to adequately plead actual malice against The Athletic.

As for Bauer's second claim regarding the three Tweets posted by Molly Knight ("Knight"), Bauer has failed to show a reasonable probability of prevailing because the Tweets constitute constitutionally protected opinion. Even if they could be read to assert facts, however, the Tweets are substantially true. Finally, Bauer has failed to plead actual malice against Knight.

---

[1] Bauer also selectively introduces post-publication information. For example, Bauer has not mentioned that MLB suspended him for two years and another accuser has come forward. *See* Gus Garcia-Roberts, *Another woman accuses Trevor Bauer of abuse as MLB suspends pitcher*, The Washington Post, Apr. 30, 2022 (available at v https://www.washingtonpost.com/sports/2022/04/29/trevor-bauer-abuse-accusations/).

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    BAUER'S FIRST DEFAMATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

### A.    California's Retraction Statute Bars Bauer's First Defamation Claim

As set out previously, Bauer has failed to plead compliance with California's retraction statute. Mot. at 9-11. Specifically, he did not adequately plead that he demanded a correction, that he served that demand on The Athletic's "publisher," or that he suffered special damages. Cal. Civ. Code § 48a(a), (d)(1), (d)(2), (d)(5); *see* Compl. ¶¶ 56-59.

In response, Bauer argues that these requirements "do[ ] not exist." Opp. at 8. Bauer is wrong. It is well-established that a plaintiff must plead specific facts demonstrating compliance with <u>all</u> of the requirements of the retraction statute.[2] *See Shahid Buttar for Cong. Comm. v. Hearst Commc'n, Inc.*, 2022 WL 1215307, at *10-*11 (N.D. Cal. Apr. 25, 2022). As discussed in the Motion, Bauer's Complaint did not specify whether he made contact in writing, whether he contacted the publisher, or whether he actually requested a correction. Mot. at 10. Although Bauer emphasizes that he pleaded that The Athletic "refused to correct the Article," Opp. at 9, this is not enough. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1081 (S.D. Cal. 2021) (explaining that the allegation that "Defendant Philipps failed to correct . . . or cease publishing defamatory content after counsel for [Plaintiff] brought the missing relevant facts and defamatory implications to his attention" was "insufficient to plead compliance with § 48a(a) of the California Civil Code" and holding that because the Court "cannot disregard the plain language of" § 48a and

---

[2] Nowhere does The Athletic argue "that the law requires Mr. Bauer to allege verbatim the content and context of all correspondence between counsel and defendants." Opp. at 9. The Athletic argues only that a plaintiff must plead full compliance with the retraction statute, which includes, as Bauer concedes, Opp. at 8-9, alleging sufficient facts that he served (1) upon the publisher at the place of publication, (2) a written notice (3) specifying the statements claimed to be libelous and (4) demanding that they be corrected (5) within 20 days after knowledge of publication.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"the FAC contains no allegation that Plaintiff served a correction complying with § 48a upon the publisher, Plaintiff cannot recover general or exemplary damages").

He then argues that, in any event, he has met the requirements of the retraction statute. But instead of pointing to where in his Complaint he has done that, he tries to use his brief and a declaration to supplement his pleadings with new allegations about his communications with The Athletic. This is entirely improper and should be rejected by the Court. *See Gonzalez v. Students for Educ. Reform, Inc.*, 2019 WL 8108732, at *2 (C.D. Cal. Oct. 17, 2019) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

But even if these newly introduced allegations were properly before the Court, they do not establish that Bauer complied with the statute.[3] Bauer's exhibits show that a demand for correction was sent to Emma Span, an editor, and Paul Fichtenbaum, the Chief Content Officer, neither of whom are the publisher. Mot. at 9; *Leeb v. Delong*, 198 Cal. App. 3d 47, 52 n.2 (1988) ("[S]ervice on the editor . . . is simply not effective."); *Buttar*, 2022 WL 1215307, at *11 ("But . . . that message was sent directly to a reporter (not the publisher, as required by § 48a)[.]"). Thus, leave to amend should not be granted because it would be futile; Bauer cannot change the past. *Cadena v. American Honda Motors Co., Inc.*, 2019 WL 6646700, at *1 (C.D. Cal. July 17, 2019) (Fitzgerald, J.) (leave to amend should be granted after defendant files a responsive pleading only if it is not "futile" (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992))).

Bauer does not even attempt to argue that he has sufficiently pleaded special damages as required by the retraction statute—clearly, he has not. *See* Opp. at 10. Instead, he argues this requirement does not apply to him because his claim is one for

---

[3] Bauer argues that The Athletic "does not challenge the sufficiency of the demand letter or the request for correction." Opp. at 9. But the Athletic could not do so because the records were not before the court. *See Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 826 (N.D. Cal. 2018) ("On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defamation *per se*. *Id.* Bauer makes a simple mistake: he confuses the general pleading standard for his substantive claim with the more stringent pleading standard created by the retraction statute. California's retraction statute is clear: absent compliance with the statute's requirements, a "plaintiff shall only recover special damages." Cal. Civ. Code § 48a(a). Courts have regularly applied the retraction statute—including its damages limitation provision—to defamation per se claims. *See Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549, 559 (S.D.N.Y. Feb. 19, 2021) (California retraction statute required dismissal of plaintiff's claims for defamation per se because plaintiff did not adequately plead special damages); *Anschutz Entmt. Grp., Inc. v. Snepp*, 171 Cal. App. 4th 598, 642 (2009) (same; explaining that the purpose of the statute is "to restrict a defamation plaintiff's right to recover general damages"). Having failed to meet the retraction statute's requirements or to adequately plead special damages, Bauer's first claim should be dismissed on this basis alone.

**B.      The Article Is Privileged as a Fair and True Report of L.H.'s Petition**

Bauer's Opposition makes clear that his real dispute is with L.H., whom he is now suing for defamation. *See Bauer v. [L.H.], et al.*, No. 8:22-cv-00868 (C.D. Cal.).[4] Throughout his Opposition, he attempts to refute the truth of her allegations and litigate the merits of the Petition, arguing it was false and malicious. Whatever the truth of those arguments, they are not relevant to the fair report privilege. *See, e.g. Crane v. Ariz. Republic*, 972 F.2d 1511, 1519-20 (9th Cir. 1992) (rejecting claims on fair report grounds; plaintiff's dispute was really with the contents of the official proceedings, not the reporting of them). The law does not require that The Athletic independently verify the accuracy the Petition before reporting on it: the very purpose

---

[4] L.H. has answered the Complaint in that matter, denying Bauer's allegations. *Bauer v. [L.H.], et al.*, 8:22-cv-00868 (C.D. Cal.), Dkt. No. 34. Her attorney, who is also a defendant in the litigation, has moved to strike under the anti-SLAPP statute. *Id.*, Dkt. Nos. 32 & 33.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of the fair report privilege is to relieve news organizations of that burden. *See, e.g.*, *id.* at 1519 ("[A] reporter need not resolve the merits of the charges . . . to invoke the privilege." (quotations and citations omitted)).

All that the law asks is that news organizations like The Athletic explain that they are reporting on a court filing and fairly convey the gist of its contents. *See* Mot. at 11-12. That is what The Athletic did. The gist of the Petition was that L.H. alleged she had been subject to violent sexual acts, resulting in potentially significant physical injuries. That is what the Article conveyed. The very purpose of the fair report privilege is to enable the public to know what is happening in the judicial system. *Sipple v. Found. for Nat. Progress*, 71 Cal. App. 4th 226, 241 (1999). The public would not receive that information without the fair report privilege, because parties could readily chill reporting on legal proceedings by bringing defamation claims against anyone repeating disputed witness testimony or allegations. *See, e.g.*, *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 101 (2016) (fair report privilege prevents "using courts for satellite litigation"). That is what Bauer is trying to do here. His attempt to wring a claim out of privileged reporting is meritless and should be rejected.

At the center of Bauer's opposition is a factual error. He argues that "the petition, read as a whole, definitively concludes that Mr. Bauer *did not* fracture L.H.'s skull." Opp. at 11 (emphasis in original). That is not accurate. The Petition itself does not offer that conclusion. Nor do the medical records attached to the Petition. Here is what the medical record attached as exhibits show: On May 17, 2021, L.H. went to an emergency room with "significant head and facial trauma" and "signs of basilar skull [fracture]." Palacios Decl. Ex. E at 78. An emergency room CT scan did not detect an "acute fracture" but L.H. was released with a diagnosis of an "acute head injury" and "assault by manual strangulation." *Id.* at 72-73. Two weeks later, she again went to a doctor with ongoing symptoms potentially indicative of an undetected fracture. *Id.* at 94. Her doctor ordered MRI scans of her brain and face to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

rule that out. *See id.* ("Suspected residual healing contusion but will r/o undetected Fx on CT.").[5] In other words, the record shows that an initial CT did not detect a fracture but a follow-up MRI was ordered to confirm that conclusion. The result of that follow-up MRI was not included in the Petition. Put simply, the Petition and its exhibits left open the possibility that there was a fracture—which is, according to Bauer, also what the Article conveyed.

Bauer mischaracterizes several of The Athletic's legal arguments. The Athletic has never argued that "it was not required to report on the CT scan results because they were in an exhibit." Opp. at 11. The Athletic *did* report the outcome of the CT exam and it did so by quoting the very medical report that Bauer relies on. *Compare* Palacios Decl. Ex A at 11 *with* Ex. E at 79 (following CT exam, "final diagnosis" was "an acute head injury and assault by manual strangulation."); *see also* Mot. at 12-13. Bauer offers no real answer to this. The Athletic was not required to use Bauer's preferred wording to summarize the final diagnosis. *See, e.g.*, *Smith v. Santa Rosa Press Democrat*, 2011 WL 5006463, at *14 (N.D. Cal. Oct. 20, 2011) (fair report privilege does not require the press "to have presented plaintiff's side of her story or her 'key facts'" (collecting cases)).

Bauer then apparently argues that if readers were more explicitly told that the emergency room CT scan found no skull fracture, it would substantially alter the meaning of the Petition. Opp. at 1, 11-12. In support of this argument, Bauer repeatedly suggests that it would be a crime to cause a fracture but it somehow is not a crime—or is a much lesser crime—to have committed the other acts alleged in the Petition. *See, e.g.*, *id.* at 12. It is unclear how he reaches this conclusion. Bauer invites the Court to view the allegations through the lens of criminal law, but criminal

---

[5]  Studies have repeatedly shown that CT scans—like any diagnostic tool—are not infallible. *See, e.g.*, Cho, et al., *Missed rib fractures on evaluation of initial chest CT for trauma patients*, 85 Br. J. Radiology (2012) (in study of 130 trauma patients, initial CT scans missed 58 rib fractures), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4625309/.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

law treats a punch that causes a concussion and a punch that causes a broken bone as the same crime. *See* Cal. Pen. Code §§ 243(d), 12022.7; *People v. Washington*, 210 Cal. App. 4th 1042, 1047 (2012) (facial bruising or wounds, concussion, and broken bones all qualify as "serious injury" subject to sentencing enhancement) (collecting cases). Other allegations in the Petition arguably assert more—not less—serious crimes, such as rape of an unconscious person. *See* Cal. Pen. Code § 261(a)(4).[6] Bauer's analogy to *Jezzini v. Adolf*, 2019 WL 4668008 (Cal. Ct. App. Sept. 25, 2019), is simply inapposite. There, it was reported that plaintiff had been charged with ten felony financial crimes; in fact, he had not been charged with any. *Id.* at *2, *6. Here, even without a fracture, the Petition plausibly alleges multiple equivalent or more serious crimes.

Bauer next appears to argue that it is the Article's implication of a skull fracture, alone, that paints him as "a villain who committed a violent assault" and that readers would have understood that the other injuries and acts alleged in the Petition "resulted from consensual rough sex." Opp. at 13. It is very hard to imagine any reader coming away from the Petition with that impression. The Petition unambiguously describes a violent, non-consensual sexual assault. It is the nature and scale of that alleged assault—repeatedly punching a woman in the face and genitals, choking her unconscious and having intercourse with her while she was unconscious—that is the gravamen of the Petition. The Article's recitation of those allegations in the Petition and the Defendants' recitation of the allegations in the Motion is not a "cheap shot," Opp. at 13, it is a description of L.H.'s legal filing. The only question, when it comes to the fair report privilege, is whether the Article fairly described the gist of the allegations *in the Petition*. It did.

---

[6] *See also People v. Miranda*, 62 Cal. App. 5th 162, 175 (Cal. Ct. App. 2021) ("[T]he law does not recognize an unconscious person's advance consent to a rape, making the sexual act a crime.") (collecting cases).

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Finally, Bauer argues that the fair report privilege cannot be resolved as a matter of law. Opp. at 13. But the cases he relies on all applied the fair report privilege as a matter of law. *See, e.g.*, *Gallagher*, 563 F. Supp. 3d at 1089-1104 (dismissing multiple claims based on fair report privilege at the pleading stage); *Crane*, 972 F.2d at 1523 (affirming summary judgment of all but one claim based on fair report privilege); *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 790-91 (2017) (affirming dismissal under the anti-SLAPP statute based on fair report privilege). Bauer selectively quotes from the general legal standard, but, as the very next sentence of the *Gallagher* decision explains, "[w]hen, however, there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report, the question is one of law." 563 F. Supp. 3d at 1083 (citations omitted); *accord Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992). Accordingly, the only claims that the *Gallagher* court considered inappropriate to dismiss were ones where the official record was not available. *E.g.*, *Gallagher*, 563 F. Supp. 3d at 1088, 1097. Here, there is no dispute about the contents of the Petition or the Article and the Court should properly dismiss Bauer's claims with prejudice on that basis.

## C.     Bauer Improperly Relies on, and Mischaracterizes, the Superior Court Proceedings

Throughout his Opposition, Bauer attempts to make legal arguments based on the post-publication proceedings before the California Superior Court regarding L.H.'s Petition for a domestic violence restraining order. *See, e.g.*, Opp. at 2, 3, 6-7, 13 n.4, 16.[7] The Article was published in June 2021. The Superior Court proceedings

---

[7] Bauer also cites to and relies on the Superior Court proceedings in his Complaint and Opposition. *See* Compl. ¶¶ 1, 73-87; Opp. at 6-7. A transcript of the August 19, 2021 hearing referenced in the Complaint has since been filed in federal court as an exhibit in the proceedings brought by Bauer against L.H. and her attorney. *Bauer v. [L.H.], et al.*, 8:22-cv-00868 (C.D. Cal.), Dkt. 33-3; Supp. Palacios Decl. Ex. W. Judicial notice of this document is appropriate.  *See* Defs' Supp. RJN.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

took place in August 2021. Events that occurred *after* publication cannot be used to support Bauer's claims. *See, e.g.*, *Argentieri*, 8 Cal. App. 5th at 790 ("[The allegedly libelous statement] reported the allegations of the malicious prosecution complaint; the fact that the court later found those allegations insufficient to state a claim . . . does not mean that [the statement] did not accurately report what the allegations were."); *Buttar*, 2022 WL 1215307, at *9 (email sent after publication of an article could not serve as a basis for finding actual malice in the publication of the article).

Bauer also repeatedly attempts to suggest that a reasonable reader of the full Petition would have reached the same conclusions as the Court did in denying a restraining order: that L.H. consented. *See, e.g.* Opp. at 13; 16. This makes no sense. L.H. could not be clearer in her Petition that she did not consent to being assaulted. *See, e.g.*, Palacios Decl. Ex. E at 31, ¶ 13 ("I did not agree to be sexually assaulted."). The Superior Court reached a contrary conclusion not by reading the Petition, but by holding four days of hearings and reviewing written evidence adduced through discovery. *See, e.g.*, Compl. ¶ 73; Supplemental Declaration of Diana Palacios ("Supp. Palacios Decl.") Ex. W.

Bauer's Complaint and Opposition also mischaracterize the proceedings and the Superior Court's findings. The issue before that court was whether it should issue a permanent domestic violence restraining order. The purpose of such an order is to prevent the recurrence of domestic violence. Supp. Palacios Decl. Ex. W at 581. The court denied the Petition for two reasons. First, it concluded based on testimony and electronic messages that L.H. had consented to the specific violent acts she was subjected to. *Id.* at 585-86. That information was only adduced through the hearing. And, second, it concluded that Bauer would not approach L.H. again and, therefore, no restraining order was necessary. *Id.* at 587. What the court deemed to be "misleading" was L.H.'s claim that she feared *future* harm from Bauer. *Id.* at 586. The court did not discredit L.H.'s allegation that Bauer had been violent. It did not find that L.H. had not suffered significant injury. Indeed, it stated:

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> Let me be clear. The injuries as shown in the photographs are terrible. Under most circumstances, merely seeing photographs such as those would serve as a per se condemnation of the perpetrator of such injuries. But petitioner had and has the right to engage in any kind of sex as a consenting adult that she wants to with another adult. . . If she had set limits and he had exceeded them, this case would be very clear. But . . . respondent did not exceed the limits that petitioner set.

*Id.* at 585-86. Again, the court's conclusion about consent was based on evidence that was not part of L.H.'s Petition, and that was adduced through later witness testimony and discovery. The court's determination has no bearing on whether The Athletic fairly and accurately summarized the Petition at the time of publication.

**D.  Bauer's Defamation by Implication Claim Fails**

In opposition, Bauer concedes, as he must, that his defamation claim is one for defamation by implication. Opp. at 14. Thus, even if the fair report privilege does not apply, Bauer still bears the burden of showing that: the Article reasonably implied he had caused a skull fracture; the implication was not substantially true as a matter of law; the implication was defamatory; and the defamatory implication was made with actual malice. Mot. at 14; *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019).

**1.  The Article Does Not Reasonably Imply that Bauer Fractured L.H.'s Skull**

Bauer's defamation by implication claim fails, first, because his alleged implied meaning is unreasonable and at odds with the plain text of the Article. In opposition, Bauer suggests that the standard the Court is to apply is in dispute. *See* Opp. at 14. It is not; he tilts at arguments The Athletic did not make. The parties both agree that the applicable legal standard is whether the Article conveyed a false and defamatory meaning, based on "the natural and probable effect upon the mind of the average reader." *Kaelin v. Globe Commc'n Corp.*, 162 F.3d 1036, 1040 (9th Cir.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1998) (quoting *Bates v. Campbell*, 213 Cal. 438, 442 (1931)). *Compare* Mot. at 14-15 *with* Opp. at 15.

Bauer's analysis of implication is brief and does not engage with the text of the Article. He just argues that reporting L.H. had "signs of a basilar skull fracture" suggested that she had a fracture and the Article did not sufficiently dispel that impression. Opp. at 14-15. As set out in prior briefing, this is not a reasonable reading of the Article. It ignores the commonsense meaning of symptoms; it ignores that the Article disclosed that L.H. underwent diagnostic tests; it ignores that the Article reported the "final diagnosis" of her visit to the emergency room. Mot. at 15.

Bauer then argues that his interpretation is reasonable because it is how Knight interpreted the Article. As set out further below, that argument itself relies on an unreasonable interpretation of her tweets. But, additionally, the Court is to make this evaluation as a hypothetical reasonable person, and not based on particular individuals.

## 2.   Bauer Has Failed to Show the Implication is False and Defamatory[8]

The crux of Bauer's implication claim is that The Athletic, by implying that he fractured L.H.'s skull, accused him of a different and more serious crime than the allegations of the Petition.[9] *See, e.g.*, Opp. at 1 ("the defamatory article and tweets materially altered the narrative around Mr. Bauer by accusing him of a different crime (a violent physical assault) on top of what L.H. accused him of (a sexual assault)"), 10 n.2 ("Defendants falsely accused [Bauer] of a crime different and more serious than what L.H. accused him of in the petition"). What Bauer fails to grasp, as

---

[8] For purposes of their motions to dismiss and to strike, Defendants accept, as they must, the Complaint's pleaded allegation that Bauer did not fracture L.H.'s skull.

[9] Bauer argues in a footnote that Bauer has not admitted the truth of anything in the Petition and "has always denied the allegations." Opp. at 16 n.6 (citing Compl. ¶ 68). The thrust of those denials—in the Complaint, in public, and before the Superior Court—appear to be that his encounters with L.H. were consensual, not that they never occurred or were not violent.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

set out above, is that striking someone and causing a fracture is the *same crime* as striking someone and causing a concussion or lacerations. *See supra* at 6-7. It is also treated as the same crime as choking someone unconscious. *See* Cal. Pen. Code § 243(d). And it is of an equivalent (if not lesser) gravity than rape of an unconscious person. *See supra* at 6-7. Even accepting Bauer's alleged implication, the Article did not accuse Bauer of a different or more serious crime than those in the Petition.

Bauer similarly argues that "the gist of the Article would have had a different effect on the average reader if The Athletic had not falsely accused Mr. Bauer of a major crime, and instead had reported on L.H.'s petition accurately." Opp. at 16. But, read conservatively, the facts alleged in the Petition constitute at least six violent felonies. His claim is that it defamed him to imply he was accused of a seventh. Courts properly have rejected that kind of discrepancy as the basis of a defamation claim, because whether a person is alleged to have committed six felonies rather than seven does not "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); *see, e.g.*, *Carver v. Bonds*, 135 Cal. App. 4th 328, 351-52 (2005) (reporting plaintiff had 22 complaints filed against him when it was only six would still be substantial truth because the gist was that an unusually high number of complaints had been filed); *see also Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 582 (1996) (dismissing defamation claim without leave to amend on substantial truth grounds).

### 3.   Bauer Has Failed Adequately to Plead Actual Malice

Finally, Bauer's claim against The Athletic fails because he has not shown and cannot show that the alleged defamatory implication was made with actual malice. In opposition, Bauer argues that he has shown actual malice because the Petition included "hard evidence" that he had not caused a fracture and the Journalists read the Petition before publishing the Article. Opp. at 17. But Bauer's "hard evidence' did not exist: as set out above and in prior briefing, L.H.'s medical records were

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

inconclusive about whether she suffered a fracture. *See supra* at 5-6; Mot. at 5, 13; Palacios Decl. Ex. E at 93-94. They cannot support the kind of knowledge actual malice requires.

Next, Bauer argues that actual malice is shown by allegations of "circumstantial evidence." Opp. at 17. The only circumstantial evidence Bauer points to are past articles, which he says exhibit "anger and hostility towards him and bias against him." *Id.* at 17-18. None of the purportedly hostile past articles were authored by the Journalists, who wrote the Article; as a matter of law they are not probative of their state of mind. *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (actual malice inquiry focuses on the state of mind of the "individual responsible for publication," not the organization as a whole). The articles are routine reporting and editorial commentary on Bauer's career and public controversies. *See* Palacios Decl. Exs. F-M. And, as a matter of law, ill will or hostility is not enough to satisfy the actual malice standard. *Harte-Hanks Comm'ns, Inc. v. Connaughton*, 491 U.S. 657, 666-67, n.7 (1989).

Finally, Bauer appears to misunderstand that in a defamation by implication case, he has two things he must prove in order to show actual malice. *See* Opp. at 18. First, Bauer must show that the authors of the Article knew that he had not caused a fracture (a showing he cannot make, for the reasons set out above). Second, he must show that they also intended or endorsed the false implication that he had caused a fracture. As the Third Circuit has explained:

> [T]the actual-malice standard will have different elements of proof in ordinary defamation cases than in defamation-by-implication cases. . . . [I]n defamation-by-implication cases, showing known falsity alone is inadequate to establish an intent to defame. In these cases, we may no longer presume with certainty that the defendants knew they were making a defamatory statement because the statement has defamatory and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

nondefamatory meanings. Therefore, in such cases, plaintiffs must show something that establishes defendants' intent to communicate the defamatory meaning.

*Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90-91 (3d Cir. 2013). In other words, "to find actual malice in defamation-by-implication cases, the plaintiff must 'show with clear and convincing evidence that the defendants intended or knew of the implications that the plaintiff is attempting to draw from the allegedly defamatory material.'" *Id.* (collecting cases); *see also Manzari v Assoc. Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir 2016) (adopting this standard: "Implications perceived in a statement but not intended by the speaker cannot be actionable in public official or public figure cases.") (citations omitted). Bauer does not attempt to make this second showing and on this basis also, his claims against The Athletic should be dismissed with prejudice.

### III.   BAUER'S SECOND DEFAMATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

**A.    The Tweets Do Not Assert Objective Facts About Bauer**

Bauer's second claim fails because Knight's Tweets are not assertions of objective facts about Bauer. Palacios Decl. Exs. B-D, Mot. at 20-24. Bauer concedes that the Tweets are statements of opinion insofar as they reflect Knight's views on consent, *see* Opp. at 21, 22, but argues that the Tweets are unprotected because there is "no way to read" them "except as assertions that Bauer did fracture L.H.'s skull," Opp. at 19.

Bauer is wrong. Under the three-part test of the Ninth Circuit—looking at the broad context of the communication, the specific context, and whether the statement at issue can be demonstrably proved true or false—the Tweets fall comfortable on the opinion side of the line dividing fact from opinion.

***Specific context.*** As set out in the Motion, the Tweets were posted in response to another Twitter user's speculation, based on a report from USA Today, about

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

L.H.'s allegations, the police investigation, and Bauer's claim to have text messages from L.H. evidencing consent to rough sex. Mot. at 6-7. The Twitter user, implicitly acknowledging that the facts were in dispute, wrote: "*If* indeed [Bauer] has text messages from [L.H.] agreeing to rough sex, *I don't know how they have a case . . . bruises and black eyes . . .* [are] part and parcel of rough sex." Palacios Decl. Ex. B (emphasis added).  Knight tersely responded with her own interpretation of what the text messages meant if they existed and if the symptoms of a skull fracture were indicative of the actual injuries: "Not possible to consent to a fractured skull." *Id.* Nowhere did Knight claim to have any special knowledge of, or to have independently investigated, the truth behind the allegations of either Bauer or L.H. To the contrary, the context makes plain that Knight, like the other user, was theorizing on what the legal implications would be if the facts ultimately turned out to be a certain way. No reasonable reader following the Twitter thread would understand Knight to be issuing a factual news report establishing the truth about the Bauer case as opposed to what she was plainly doing: rendering an opinion about the nature of consent based on the disputed information currently available.[10]

Bauer's main argument about specific context—that Knight was "correct[ing]" the facts for the other Twitter user (Opp. at 23)—is belied by the messages themselves. Knight and the Twitter user were not debating what happened; they were debating the legal issue of what consent means. The Tweets were, in fact, part of the well-established, and legally protected, tradition of citizens commenting on publicly available reports from which readers could freely review and draw their own conclusions about what actually occurred. *See Cochran v. NYP Holdgs., Inc.*, 58 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 1998); *Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1268 (C.D. Cal. 2001) (online poster's statement based on

---

[10] Despite Bauer's contention to the contrary, Opp. at 18-19, "[w]hether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 1562 (2013).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

linked public document was not actionable because "any reader may look at the same document and determine what they think of the information"); *Torain v. Liu*, 2007 WL 2331073, at \*3 (S.D.N.Y. Aug. 16, 2007) (statement that plaintiff was a "pedophile" was not actionable where informed listeners would not think accusation was "based on some undisclosed information known only to [defendant]"). Despite Bauer's wishful reading of the Tweets, their specific context was not that Knight and others on Twitter were in the business of establishing facts; they were in the business of lobbing opinions back and forth.

Bauer also tries to truncate the analysis of specific context by labeling it "nonsensical" to conclude that Knight was not asserting facts merely because she used incomplete sentences and sharp rhetoric in a heated internet debate.  Opp. at 22. Far from being a nonsensical argument, courts across the country regularly take into account the nature of the language used to determine whether reasonable readers would make of a statement. To state the obvious, "language not generally found in fact-based documents" tends to negate the claim that a statement is an assertion of fact.  *Global Telemedia Intern.*, 132 F. Supp. 2d at 1267; *see also, e.g.*, *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1294 (9th Cir. 2014); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1177-78 (2008); *Doe v. Cahill*, 884 A.2d 451, 465-66 (Del. 2005).

Finally, Bauer proposes that because Knight was a journalist who covered baseball, readers would just naturally expect her to state facts. Opp. at 23. But even Bauer concedes that part of the Tweets is clearly opinion. In other words, whatever expectations readers bring to a writer's work cannot override the words themselves. That was true for Bauer, and it is true of reasonable readers. Nothing about the context of the Twitter thread in which the Tweets appear signal to reasonable readers that Knight is working from knowledge discovered through her reporting.

To the contrary, Knight and the other Twitter user were offering interpretations of what was known—L.H.'s public and widely reported allegations and Bauer's public and widely reported response that he had texts from L.H. showing consent. As

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

these statements' "factual referent is disclosed," or obvious from the context, they are not actionable. *Cochran*, 58 F. Supp. 2d at 1122-23 (dismissing defamation claim at pleading stage; statements based on references to "police conspiracy theory" used at O.J. Simpson trial not actionable in light of "shared public knowledge" of trial proceedings, theories, and underlying factual allegations); *see also* Mot. at 23.

***Provable as Fact.*** Bauer fares no better in trying to show that the Tweets state as provable fact that Bauer fractured L.H.'s skull. He relies on the astonishing—and erroneous—proposition that "[d]irect accusations of criminal misconduct are unanimously recognized as implying objective facts." Opp. at 23. That is a glaring misstatement of the law. The courts have repeatedly held that even overt accusations of criminal behavior can be rendered opinion by the context. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1078 (9th Cir. 2005) (calling plaintiff a "pimp" could be interpreted as "criminal accusation," but context rendered such interpretation unreasonable as a matter of law); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1102-03 (N.D. Cal. 1999) (holding accusation of murder was opinion and other "accusations of criminal activity," such as embezzlement, "are not actionable if the underlying facts are disclosed"); *Torain*, 2007 WL 2331073, at *3 (*supra*).

Here, Bauer needs to show that a reasonable reader would understand the Tweets to say that "Bauer fractured L.H.'s skull." Had Knight intended to make that bald factual assertion she easily could have. Except that was not what she was saying and not even close to her purpose in writing. She was instead airing her opinion that a person cannot consent to having her skull broken. She was sketching out her view of the bounds of consent based on the disputed allegations in the Bauer case—not resolving those disputed allegations and not reporting out as a journalist the facts of the case. If in the end the facts, when finally established, showed both that there was consent and that there was a fractured skull, Knight's opinion would still be that no consent had actually been rendered.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Bauer's misbegotten attempt to take Knight's half-sentence "not possible to consent to a fractured skull" —indisputably an opinion—and recast it as the factual statement "Bauer fractured L.H.'s skull" is plainly an unreasonable reading.

**Broad context.** When Bauer turns to the final Ninth Circuit factor, the broad context of the communication at issue, his argument proves too much. Bauer is of course right when he says Twitter at times provides news. Opp. at 20. But the fact that it sometimes contains news does not lead to the conclusion that Knight's Tweets must be providing news—any more than the fact that Twitter contains loads of opinion will render everything on Twitter an opinion. Instead, the cases he cites stand only for the unexceptional proposition that not everything on Twitter is presumptively an opinion. *See Unsworth v. Musk*, 2019 WL 4543110 at *5 & n.4 (C.D. Cal. May 10, 2019) (Because Twitter contains both opinion and news, and defendant's Twitter was an "illustrative" example of this, tweets are not "presumptively opinion"); *BDO USA, LLP v. EverGlade Global, Inc.*, 2022 WL 41416 at *5 (Del. Ch. Jan. 5, 2022) (Twitter "cannot be categorically pushed into the 'opinion' column") (emphasis added); *Boulger v. Woods*, 917 F.3d 471, 482 (6th Cir. 2019) (distinguishing between a "Twitter user who tweets his or her thoughts on various celebrities" and the "Twitter account of an online news source, such as the New York Times").

But he cannot deny that courts have routinely noted that Twitter's status as a home to bombast and caustic debate is one factor for the Court to consider in understanding whether reasonable readers would view a particular statement as factual. As one court put it, Twitter is a forum "where readers expect to see strongly worded opinions rather than objective facts." *Greenspan v. Qazi*, 2021 WL 2577526, at *6 (N.D. Cal. June 23, 2021) (citing *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012)); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020); *Rapaport v. Barstool Sports, Inc.*, 2021 WL 2635821, at *7 (S.D.N.Y. June 25, 2021)

REPLY IN SUPPORT OF MOTION TO DISMISS
4872-2328-4782v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 (tweets and blog posts "may signal to reasonable audiences that what they are reading

2 is likely to be a statement of opinion").

3      Here, where Twitter users were sharing their personal views in a divisive

4 debate about consent, sex, and violence, no one would conclude they were operating

5 as purveyors of news to the reading public. Reasonable readers would know that they

6 were in a familiar Twitter context where skepticism was warranted and opinion were

7 to be expected.

8      In sum, because the Tweets can reasonably be interpreted to reflect only

9 Knight's own views and do not make factual assertions about Bauer, they are

10 protected by the First Amendment.

11 **B.    The Alleged Implications of the Tweets are Substantially True**

12      Even if the Tweets were construed to imply a fact about Bauer, Bauer's libel

13 claim would still fail. Bauer bears the burden of showing that both the "implications

14 to be drawn convey defamatory facts" and the "challenged implications are *not*

15 'substantially true.'" *Issa*, 31 Cal. App. 5th at 707. Bauer errs in concluding that the

16 implication to be drawn is that Knight accused him of a crime he did not commit with

17 her reference to the skull fracture. Opp. at 14-15, 23-24. As set forth above, Bauer

18 does not dispute that he physically pummeled L.H. Whether that pummeling caused

19 bruises and black eyes or skull injury, the gist and sting of the accusation remains the

20 same: he pummeled L.H. *See Vogel v. Felice,* 127 Cal. App. 4th 1006, 1021 (2005)

21 ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the

22 sting, of the libelous charge be justified."). Bauer's second claim must accordingly be

23 dismissed with prejudice for the reasons discussed above.  *See supra* at 11-12.

24 **C.    Bauer Fails to Sufficiently Allege Actual Malice as to Knight**

25      Were the Tweets construed to communicate the defamatory falsehood that

26 Bauer alleges—that he committed a crime by fracturing L.H.'s skull—his claim still

27 fails because he has not adequately pleaded actual malice. Specifically, Bauer has

28 failed to plead clear and convincing facts showing that Knight "intended [her Tweets]

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to convey the [alleged] defamatory impression," *Thomas v. L.A. Times Commc'ns, LLC,* 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002), and that Knight made that alleged factual assertion with "knowledge of or serious subjective doubts" about whether Bauer broke L.H.'s skull. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1238 (N.D. Cal. 2014).

Bauer's Opposition demonstrates he cannot make this showing. His burden is to plead facts about Knight's state of mind at the time of the Tweets. Instead, he points to "other statements" by Knight that Bauer claims "cast [him] in a negative light." Opp. at 24. But actual malice "has nothing to do with bad motive or ill will." *Harte-Hanks Comm'ns*, 491 U.S. at 666 n.7. "The focus is . . . on the 'defendant's attitude toward the truth or falsity of the material published . . . not the defendant's attitude toward the plaintiff.'" *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 92 (2007).

In trying to establish actual malice, Bauer also argues that Knight "either read the 67-page petition and knew her claims about the skull fracture were false, or . . . posted publicly . . . without actually reading it." Opp. at 24. Under neither theory does Bauer show that Knight made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984).  As an initial matter, Bauer has failed to allege sufficient facts supporting an inference that Knight read the Petition, *see* Mot. at 25, but even if she read the Petition, she would have learned only that tests for a skull fracture were inconclusive. *See supra* at 5-6. Nowhere does the Petition establish there was no skull fracture, meaning that there was no truth about the skull injury for Knight to disregard at the time she published the Tweets. On the other hand, her purported failure to read the Petition would not equate with actual malice. Under well-settled case law, failure to investigate does not constitute actual malice. *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1240 (allegations that defendant "disregarded publicly known information" and "had no reliable information" to base statements

1 | were insufficient to plead actual malice); *see also St. Amant v. Thompson*, 390 U.S.

2 | 727, 733 (1968) ("Failure to investigate does not in itself establish bad faith.").

3 |     In short, Bauer's actual malice allegations fall far short of the "clear and

4 | convincing" standard he must meet even at the pleading stage, and his second claim

5 | should accordingly be dismissed with prejudice. Mot. at 17-19, 24-25.

6 | **IV.   CONCLUSION**

7 |     For the foregoing reasons, Bauer's Complaint should be dismissed with

8 | prejudice.

9 |

10 | DATED: August 15, 2022           DAVIS WRIGHT TREMAINE LLP
   |                              DIANA PALACIOS

11 |                              ERIC H. LAMM

12 |                              By:    */s/ Diana Palacios*
   |                                        Diana Palacios

13 |

14 |                              Attorneys for Defendants THE
   |                              ATHLETIC MEDIA COMPANY &

15 |                              MOLLY KNIGHT

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899