UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 22-2062-MWF (AGRx)              **Date:  December 5, 2022**
**Title:**     Trevor Bauer v. The Athletic Media Co. & Molly Knight

Present:     <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

    Deputy Clerk:                      Court Reporter:
    Rita Sanchez                       Not Reported

    Attorneys Present for Plaintiff:   Attorneys Present for Defendant:
    None Present                       None Present

**Proceedings (In Chambers):**    ORDER RE: SPECIAL MOTION BY
                                  DEFENDANTS THE ATHLETIC MEDIA
                                  COMPANY AND MOLLY KNIGHT TO STRIKE
                                  PLAINTIFF'S COMPLAINT [20]; MOTION BY
                                  DEFENDANTS THE ATHLETIC MEDIA
                                  COMPANY AND MOLLY KNIGHT TO DISMISS
                                  PLANTIFF'S COMPLAINT [22]

    Before the Court are two motions:

    The first is Defendants The Athletic Media Company ("The Athletic") and
Molly Knight's Special Motion to Strike Plaintiff's Complaint (the "MTS"), filed on
May 31, 2022.  (Docket No. 20).  Plaintiff Trevor Bauer filed an Opposition (the "Opp.
to MTS") on July 11, 2022.  (Docket No. 28).  Defendants filed a Reply (the "Reply to
MTS") on August 15, 2022.  (Docket No. 31).

    The second is Defendants' Motion to Dismiss Plaintiff's Complaint (the
"MTD"), also filed on May 31, 2022.  (Docket No. 22).  Plaintiff filed an Opposition
(the "Opp. to MTD") on July 11, 2022.  (Docket No. 29).  Defendants filed a Reply
(the "Reply to MTD") on August 15, 2022.  (Docket No. 30).

    The Court has read and considered the Motion and held a hearing on **August 29**,
**2022**.

    For the reasons discussed below, the Court rules as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

- The MTS is **GRANTED *in part with leave to amend*** and **DENIED *in part***.  Plaintiff has not adequately pled compliance with California's retraction statute, and has not adequately pled special damages.  However, a reasonable factfinder could conclude that the tweets were impliedly asserting an objective fact because of the context, language, and provable nature of the tweets.

- The MTD is **DENIED *as moot*** as to Claim One and **DENIED** as to Claim Two for the same reasons as the MTS.

## I.    BACKGROUND

Plaintiff initiated this action on March 29, 2022.  (Complaint (Docket No. 1)).

According to the Complaint, Plaintiff won the Cy Young award, an honor awarded to the best pitcher in the National League of Major League Baseball (the "MLB"), on November 11, 2020, the same month in which he began free agency, a period during which he could be signed by any team in the MLB.  (*See id.* ¶¶ 15–16).

Shortly thereafter, Plaintiff alleges that The Athletic began a campaign of harassment against him, publishing several articles without adequate evidence characterizing Plaintiff as a potential detriment to the culture of the baseball team that signed him due to his alleged controversial nature.  (*See id.* ¶¶ 16–21).

Plaintiff states he "signed a record-breaking contract with the Los Angeles Dodgers" baseball team, after which Plaintiff alleges The Athletic continued its unsubstantiated attacks on him.  (*Id.* ¶¶ 23–25, 32–33).  Plaintiff alleges that these attacks came in particular from Defendant Knight, who wrote two articles about Plaintiff, repeatedly taunted and made false claims about Plaintiff, and speculated that Plaintiff harassed women online and possibly offline.  (*See id.* ¶¶ 25–31).

On June 28, 2021, a complainant (identified elsewhere as "L.H.") petitioned for a restraining order against Plaintiff on the basis of sexual assault.  (*See id.* ¶ 34).  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 22-2062-MWF (AGRx)**                    **Date:  December 5, 2022**
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

Athletic subsequently published an article concerning L.H.'s petition; that article, attached to the Complaint, forms the basis for one of Plaintiff's claims.  (*See id.* ¶ 35).

Central to Plaintiff's allegations is that although in the petition for a restraining order L.H. claimed she had "'signs of a basilar skull fracture,'" the petition also attached the actual CT scan results, which conclusively indicated no such fracture existed.  (*Id.* ¶¶ 34–38).  The Athletic's article did not refer to the CT scan results, which the Complaint alleges gave the false impression that Plaintiff fractured L.H.'s skull.  (*See id.* ¶¶ 39–41).

Plaintiff alleges that Defendant Knight furthered the false impression in The Athletic's article by posting multiple tweets about the allegations, which stated that it is not possible to consent to a fractured skull and that consenting to engaging in rough sex is not the same as consenting to a cracked skull.  (*See id.* ¶¶ 43–47).

The Complaint alleges that other news outlets, including Sports Illustrated and Fox News, relying on The Athletic's article, perpetuated the falsity by failing to include that L.H. did not actually suffer a skull fracture.  (*See id.* ¶¶ 49–51).  Plaintiff alleges that while those other news sites corrected their articles once Plaintiff informed them there was no evidence of an actual fracture.  (*See id.*).

Plaintiff alleges that The Athletic knew the implication that Plaintiff fractured L.H.'s skull was false, but deliberately ignored the records showing that there was no fracture, and that actual malice is shown by the continued campaign of attack on Plaintiff's character.  (*See id.* ¶¶ 52–55).  Plaintiff further alleges that he contacted The Athletic after publication of the article, explaining that the records attached to the petition showed there was no fracture, and the Athletic refused to correct the article; it was not until a demand letter was received did the Athletic acknowledge that no fracture was found.  (*See id.* ¶¶ 56–58).  Plaintiff contends this was still inaccurate because there was never an actual diagnosis of a skull fracture, just indications of a possible fracture.  (*See id.* ¶ 59).

Plaintiff also alleges that Defendant Knight acted with actual malice in posting her tweets by including mention of a cracked or fractured skull as there was no source

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022**
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

attribution, Defendant Knight ignored L.H.'s declaration, and Defendant Knight had a prior history of statements concerning Plaintiff showing malice.  (*See id.* ¶¶ 60–62). Plaintiff alleges that while Defendant Knight deleted the tweets after receiving a demand letter, she did not post a corrective tweet.  (*See id.* ¶ 65).

The Complaint alleges that Defendants did not cease attacking Plaintiff after the publication of the article and the tweets, including by publishing further articles and tweets about the allegations.  (*See id.* ¶¶ 67–72).

Plaintiff states that a Los Angeles County Superior Court judge ultimately denied the petition for a restraining order, finding that L.H. consented to any acts that occurred between Plaintiff and L.H., including rough sex, there was no logical basis for L.H.'s accusations, and that L.H. intended to damage Plaintiff.  (*See id.* ¶¶ 73–76). However, Plaintiff alleges that Defendants continued to incorrectly report the facts, failing to report that the Superior Court found no indication of assault or abuse, and mischaracterized the findings.  (*See id.* ¶¶ 77–88).  On February 8, 2022, the Los Angeles District Attorney announced Plaintiff would not be charged with a crime. (*See id.* ¶¶ 89–91).

The Complaint brings two claims for relief, each for defamation per se:  one against The Athletic, and one against Defendant Knight.  (*See id.* ¶¶ 92–130).  Plaintiff prays for relief in the form of compensatory, punitive, and special damages, along with attorney's fees and costs.  (*See id.* at 25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

## II.   DISCUSSION

### A.   Requests for Judicial Notice

In conjunction with both motions and their respective oppositions, the parties request the Court take notice of various documents.  Defendants filed what appear to be two identical requests for judicial notice, one attached to each of the MTS and MTD, and Plaintiff did the same, filing what appear to be two identical requests for judicial notice, also each attached to the Opp. to MTS and Opp. to MTD; Defendants also filed a supplemental request for judicial notice in conjunction with their Reply to MTS. (Docket Nos. 20-2, 22-2, 28-2, 29-2, 31-2 (collectively, "RJNs")).  Plaintiff indicates he does not oppose either of Defendants' requests for judicial notice accompanying their opening motions.  (*See* Docket Nos. 28-2 and 29-2 at 1).  Defendants do not appear to indicate specific objections to Plaintiff's requests for judicial notice.

In totality, Defendants request the Court take judicial notice of the following documents, arguing, *inter alia*, that each is subject to incorporation by reference:

- The complete thread of Defendant Knight's tweets, including the three alleged to be defamatory by Plaintiff;

- L.H.'s petition for restraining order in Los Angeles Superior Court;

- Articles about Plaintiff published by Defendant The Athletic;

- Other tweets by Defendant Knight;

- Other articles published about Plaintiff by third parties;

- Other articles published about L.H. by third parties; and

- A copy of a hearing transcript in the same matter in which L.H. petitioned for a restraining order in Los Angeles Superior Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

The Court "may 'take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1085 n.1 (9th Cir. 2020) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  Given Plaintiff's stated non-opposition, the Court sees no reason why these documents are unsuitable for judicial notice.

Plaintiff requests the Court take judicial notice of the following documents:

- An email from Plaintiff's representative to a managing editor at The Athletic; and

- A letter from Plaintiff's attorney to the chief content officer and a managing editor at The Athletic.

Plaintiff notes that both of these documents are referenced in the Complaint.  For that reason, these documents are appropriate for judicial notice.  *See id.*

Accordingly, the RJNs are **GRANTED**.

### B.    Motion to Strike

Defendants move under California Code of Civil Procedure section 425.16(b)(1) (California's "anti-SLAPP" statute) to strike the entirety of the Complaint, arguing each of Plaintiff's claims for relief arises out of Defendants' exercise of free speech. (*See* MTS at i).

The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) (holding that discovery provisions of section 425.16 do not apply in federal court).

The Court notes, as does Plaintiff, that the applicability of the anti-SLAPP statute in federal court has been questioned.  *See*, *e.g.*, *Makaeff v. Trump Univ., LLC*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)              Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof").  Nonetheless, under recently affirmed existing precedent, Defendants are able to bring the MTS.  *See*, *e.g.*, *CoreCivic, Inc. v. Candide Grp., LLC*, --- F.4th ----, 2022 WL3724307, at *4–*6, *8 (9th Cir. Aug. 30, 2022) (continued applicability of California anti-SLAPP statute in federal court).

Motions brought under the anti-SLAPP statute are evaluated in two steps.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 819, 124 Cal. Rptr. 3d 256 (2011) (internal quotation marks and citation omitted).  "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Id.*  "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended by* 897 F.3d 1224 (9th Cir. 2018), *cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019).

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  *Id.* (emphasis in original).

### 1.  Protected activity

Defendants argue that Plaintiff's claims are predicated on alleged defamation in three tweets and one line in an article.  (*See* MTS at 1).  Defendants contend both the article and tweets were statements made concerning matters of public interest and in public fora, with the article reporting news and the tweets consisting of pure speech. (*See id.* at 8–10).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

The critical question in determining whether the "arising from" protected activity requirement is met "is whether the plaintiff's cause of action itself was ***based on*** an act in furtherance of the defendant's right of petition or free speech."  *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78, 124 Cal. Rptr. 2d 519 (2002) (emphasis in original).  The Court therefore looks to the "***principal thrust*** **or** ***gravamen*** of the plaintiff's cause of action [to] determine[] whether the anti-SLAPP statute applies." *Freeman v. Schack*, 154 Cal. App. 4th 719, 727, 64 Cal. Rptr. 3d 867 (2007) (emphasis in original).

"A plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"  *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 801–02, 63 Cal. Rptr. 3d 575 (2007) (citations omitted).  On the other hand, "[i]f the mention of protected activity is only incidental to a cause of action based essentially on nonprotected activity, then the Anti-SLAPP statute does not apply."  *Baharian-Mehr v. Smith*, 189 Cal. App. 4th 265, 272, 117 Cal. Rptr. 3d 153 (2010) (internal quotation marks omitted).

As alluded to above, Defendants argue that Plaintiff's claims arise out of protected activities:  an article published by Defendant The Athletic as well as three tweets authored by Defendant Knight.

### a.  Article

Plaintiff's allegations largely center around a line in The Athletic's article that states:  "In the woman's declaration, signed under penalty of perjury of California state laws, she said that her medical notes state that she had 'significant head and facial trauma' and that there were signs of basilar skull fracture."  (Palacios Decl. Ex. A at 9; *see also* Complaint ¶ 36 (quoting same line)).  Plaintiff alleges this line implied that Plaintiff fractured L.H.'s skull by not mentioning the results of the CT scans, which The Athletic notes in the article were in its possession and stated no fracture was found.  (*See* Complaint ¶¶ 35–41).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

*Retraction*: As an initial matter, Defendants contend that Plaintiff's claim based on The Athletic article is barred by California's retraction statute, California Civil Code section 48a(a), which requires a plaintiff demand a correction from a news organization prior to filing suit by serving the publisher, at the place of publication, written notice identifying the at-issue statements and demanding their correction within twenty days. (*See* MTS at 10). Defendants argue the Complaint fails to do this, as it does not contain adequate details as to the method of contact, with whom contact was made, or what was demanded, and further that the article was subsequently updated. (*See id.* at 11). Defendants also argue that Plaintiff failed to adequately plead special damages. (*See id.* at 11–12).

Plaintiff disputes that the retraction demand was inadequately pled, arguing that the Complaint contains all the information required by the California statute and that Defendants attempt to read into the statute a strict textual interpretation that is unsupported by law. (*See* Opp. to MTS at 10–11). Plaintiff also argues that it is unnecessary to allege special damages when claims for defamation per se are brought. (*See id.* at 12).

In the Reply to MTS, Defendants again contend that Plaintiff failed to "specify whether he made contact in writing, whether he contacted the publisher, or whether he actually requested a correction." (Reply to MTS at 3–4). Defendants further argue that Plaintiff should not be permitted to offer extrinsic evidence, such as a declaration, or use the briefing to modify his pleadings, and further that there is no basis to grant leave to amend because Bauer cannot amend the contents of the letters themselves, which are insufficient. (*See id.* at 4–5). Defendants lastly argue that the retraction statute applies to claims for defamation per se, including the limitations to damages, and thus Plaintiff concedes he has not adequately pleaded special damages. (*See id.* at 6).

California Civil Code section 48a(a) requires that, in order for general damages to be available, a plaintiff must "serve upon the publisher, at the place of publication . . . a written notice specifying the statements claimed to be libelous and demanding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

same be corrected" within twenty days of learning of the publication.  Cal. Civ. Code §
48a(a).

        The letter Plaintiff sent to The Athletic was addressed to Paul Fichtenbaum,
Chief Content Officer, and Emma Span, Managing Editor (MLB).  (*See* Brown Decl.
(Docket No. 28-1), Ex. B).  The letter identifies the article at issue, was sent within the
twenty-day period, and demands correction.  (*See id.*).  As acknowledged at the
hearing, the threshold issue in determining whether the letter complied with section
48a(a) is therefore whether either of the recipients was in fact "the publisher."

        Defendants provide authority to support their assertion that neither recipient was
"the publisher" in the Reply to MTS, additionally arguing that the Complaint does not
attach the letter or adequately describe its contents.  (*See* Reply to MTS at 3–4).

        In *Leeb v. Delong*, the California appellate court stated that "California's libel
retraction statute requires service on the publisher; service on the editor, although he is
the publisher's agent, is simply not effective."  198 Cal. App. 3d 47, 52 n.2, 243 Cal.
Rptr. 494 (1988) (citing, *inter alia*, Cal. Civ. Code § 48a).  Additionally, in *Shahid
Buttar for Congress Committee v. Hearts Communications, Inc.*, the district court
noted that "[t]he Complaint fail[ed] to identify any direct communication between
Buttar and Defendant Hearst, the publisher," as well as that the sole identified
communication that could have potentially satisfied the requirement of section 48a(a)
"was sent directly to a reporter (not the publisher, as required by [section] 48a)."  CV
21-5566-EMC, 2022 WL 1215307, at *11 (N.D. Cal. April 25, 2022).

        Based on *Leeb*, sending the letter to Emma Span, as a Managing Editor, did not
comply with the requirements of section 48a(a).  *See* 198 Cal. App. 3d at 52 n.2.  It
also appears unlikely that Paul Fichtenbaum, as Chief Content Officer, was the
appropriate addressee, given that section 48a requires the "publisher" and there is no
indication Fichtenbaum is indeed the publisher.  *See Buttar*, 2022 WL 1215307, at *11.

        Plaintiff does not address specifically whether either individual should be
deemed to be the "publisher" under section 48a(a), instead arguing that the section

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

48a(a) is not to be interpreted so literally.  (*See* Opp. to MTS at 11 (citing *Kapellas v. Kofman*, 1 Cal. 3d 20, 30–31, 81 Cal. Rptr. 360 (1969)).

In *Kapellas*, the California Supreme Court wrote that "[t]he purpose for the requirement for the described specificity is to facilitate the publisher's investigative efforts in determining whether statements in the initial article contained error and should be corrected."  1 Cal. 3d at 30–31.  The California Supreme Court continued by stating that "[t]he crucial issue in evaluating the adequacy of the notice turns on whether the publisher should reasonably have comprehended which statements plaintiff protested and wished corrected."  *Id.* at 31.  However, the plaintiff in *Kapellas* sent two letters directly to an individual identified as the publisher of the newspapers at issue.  *See id.* at 26–27.  Accordingly, the analysis in *Kapellas* does not consider the question of whom is considered a publisher for the purposes of section 48a(a), as the issue was of if the letters gave the publisher adequate notice of what statements the plaintiff wanted retracted.  *See id.* at 31–34.

The only case the Court could find that addressed the issue is *Freedom Newspapers, Inc. v. Superior Court*, 4 Cal. 4th 652, 14 Cal. Rptr. 2d, 839 (1992).  There, the California Supreme Court noted that it had previously "stated that the term 'publisher,' as used in section 48a[(a)], 'clearly refers to the owner or operator of the newspaper . . ., rather than the originator of the defamatory statements.'"  *Id.* at 656 (quoting *Field Research Corp. v. Superior Ct.*, 71 Cal. 2d 110, 114, 77 Cal. Rptr. 243 (1969)) (omission in original).  That interpretation was because "'[i]t is only the publisher . . . who has the power effectively to correct or retract.'"  *Id.* (quoting same at 115).  The California Supreme Court continued by explaining that "the Legislature did not employ the term 'publisher' in th[e] technical, legal sense, but rather according to its common meaning:  the owner or operator of a newspaper," and reasoning that while "service of the required notice on the editor of a newspaper would go far toward accomplishing the purpose designed to be served by section 48a[(a)]," section 48a(a) "specifies that the notice is to be served upon the 'publisher' of the newspaper."  *Id.* at 656–657. (citing same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

However, this interpretation notwithstanding, the California Supreme Court also wrote that section 48a was "not intended to impose a technical barrier to recovery when the purposes designed to be served by section 48a are satisfied." *Id.* at 658. *Freedom Newspapers* therefore held

> that the requirements of section 48a[(a)] are satisfied when the demand for correction is (1) served upon the publisher, (2) served upon a person designated by the publisher to receive such notices, or (3) served upon someone employed at the newspaper other than the publisher or the publisher's designee *and* the publisher acquires *actual* knowledge of the request for correction within the time limit set forth in the statute.  Such a rule is consistent with both the language of the statute and the policy it was designed to serve.

*Id.* (footnotes omitted) (emphasis in original).

Under *Freedom Newspapers*, it is possible that at least one of the individuals to whom Plaintiff's demand letter was sent could qualify under section 48a(a).  However, in *Freedom Newspapers*, although the plaintiff sent the retraction letter to the editor of the publication, the plaintiff specifically alleged that the letter "'was known to the publisher of the newspaper at or about the time it was written . . .' and the publisher had delegated to the editor the authority to respond to the notice." *Id.* at 657.  The California Supreme Court therefore found "that these allegations, if proved, are sufficient to establish that the notice was served upon the publisher within the meaning of section 48[(a)]." *Id.*

At the hearing, Plaintiff argued that the Complaint adequately alleges adequate knowledge as required by *Freedom Newspapers*, as Plaintiff sent both an email and letter to the Chief Content Officer and Managing Editor, who responded, indicating that The Athletic necessarily had notice.  Plaintiff also argued that The Athletic made no showing as to whom the letter should have been sent to properly serve on the publisher.  The Athletic responded that nothing prevented Plaintiff from sending the letter to the publisher, and there was no evidence The Athletic had actual knowledge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

Considering the relevant authority and the interpretation of California law by California courts, the Court must conclude that Plaintiff, at this stage, has not adequately alleged that the demand letter was sent to the publisher, as required by section 48a(a).  The letter was sent to a Managing Editor and a Chief Content Officer, and the Complaint nowhere alleges that these individuals were either designated by the publisher to receive notices or that the publisher acquired actual knowledge of the demand letter.  *See id.* at 658.

Additionally, Plaintiff provided no authority to support that the burden is on The Athletic to identify the appropriate method for serving the publisher, and did not justify that the burden should be on The Athletic by indicating that, for example, Plaintiff had sought to identify the method to serve the publisher and was unable to do so.  Plaintiff further does not allege that the Managing Editor had the authority to respond on behalf of the publisher.  *Cf. id.* at 657.

Under section 48a(a), Plaintiff is therefore only able to seek special damages, which are defined in section 48a(d)(2) as

> all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other.

Cal. Civ. Code § 48a(d)(2).

Defendants contend that the Complaint fails to allege special damages.  (*See* MTS at 11–12, Reply to MTS at 5).  Plaintiff argues that he is not required to state special damages under defamation per se.  (*See* Opp. to MTS at 12).  However, it does not appear that Plaintiff's cited authority addresses defamation per se or the restriction of damages under section 48a(a).  *See Albertini v. Schaefer*, 97 Cal. App. 3d 822, 159 Cal. Rptr. 98 (1979).  Further, in *Anschutz Entertainment Group, Inc. v. Snepp*, the plaintiffs alleged that statements were defamatory per se.  *See* 171 Cal. App. 4th 578, 604, 90 Cal. Rptr. 3d 133 (2009).  The California Court of Appeal still found that

CIVIL MINUTES—GENERAL                                                    13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                 Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

section 48a(a) limited the group to special damages due to their failure to serve a
"legally effective" retraction demand, and further held that "[s]pecial damages must be
specially plead in a defamation case." *Id.* at 643 (citations omitted).

The Complaint therefore fails to adequately plead special damages, which
Plaintiff appears to acknowledge, as it only alleges that the defamatory statements
"severely damaged [Plaintiff]'s reputation, and caused him anguish, humiliation,
embarrassment, and financial loss."  (Complaint ¶ 110).

Because Plaintiff has not alleged he complied with California Civil Code section
48a(a), he is limited only to special damages, which he has not adequately pled.  These
are grounds upon which to grant the MTS as to Plaintiff's claim based on the article in
The Athletic.  *See Anschutz*, 171 Cal. App. 4th at 643 ("The motion to strike the
second complaint . . . should have been granted" due to failure to serve demand letter
under section 48a(a) and to adequately plead or prove special damages).

###        i.    Leave to Amend

Leave to amend is generally proper where an anti-SLAPP motion is granted.
*See Sanchez v. Am. Media, Inc.*, CV 20-2924-DMG (PVCx), 2020 WL 8816343, at *4
(C.D. Cal. Dec. 29, 2020) (citing *Verizon Del., Inc. v. Covad Commc'ns*, 377 F.3d
1081, 1091 (9th Cir. 2004), *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140
(C.D. Cal. 2015), *aff'd* 853 F.3d 1004 (9th Cir. 2017) ("[I]t is generally error to grant a
defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting
the plaintiff leave to amend")).

At the hearing, The Athletic argued that leave to amend would be futile because
Plaintiff could not plead around his failure to plead actual malice or that the article was
substantially true.  While Rule 15 requires that leave to amend "be freely given when
justice so requires," Fed. R. Civ. P. 15(a)(2), it "is properly denied . . . if amendment
would be futile."  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th
Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

### *Actual malice*

Defendants argue in their papers that Plaintiff has failed to adequately allege actual malice, as Plaintiff has not shown by clear and convincing evidence that The Athletic and writers of the article intended to imply that L.H.'s skull was fractured or knew if her skull was fractured and that Plaintiff cannot rely on other articles as probative of intent because they were not written by the same journalists and general ill will is insufficient to show actual malice.  (*See* MTS at 18–19).  Defendants also argue that the article included L.H.'s final diagnosis, showing that the medical records in the petition were not ignored, that the medical records are inconclusive as to a fracture, and The Athletic's alleged failure to promptly correct cannot be evidence of actual malice.  (*See id.* at 20).

With respect to the conclusiveness of the records of L.H.'s injuries, Defendants argue that documents in L.H.'s petition raise a factual dispute as to whether or not there was a fracture of L.H.'s skull, as documentation from a later medical appointment indicate that a doctor had doubts as to the accuracy of the CT scans and ordered an MRI to determine if the CT scan had missed a fracture.  (*See id.* at 13 (citing Palacios Decl. Ex. E at 94 ("Suspected residual healing contusion but will r/o undetected Fx on CT," with "r/o" noted by the briefing to mean "rule out")).

Plaintiff argues that at the pleading stage, he need only show a probability of making a showing of actual malice by clear and convincing evidence, which he does because the writers of the article had the petition which stated that L.H.'s skull was not fractured but still implied that her skull was fractured, and that he may rely on circumstantial evidence such as other articles.  (*See* Opp. to MTS at 18–19).

Defendants' Reply emphasizes the arguments that the medical records were inconclusive at best and therefore there was no "hard evidence" for the journalists to consider and that the circumstantial evidence cannot be used to prove actual malice because none was authored by the writers of the article and ill will cannot show actual malice.  (*See* Reply to MTS at 14).  Defendants further argue that Plaintiff cannot show both that the authors of the article knew Plaintiff did not fracture L.H.'s skull, based on

---

**CIVIL MINUTES—GENERAL**                                                      **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

their argument that the records are inconclusive, and that they also intended the
implication that he caused a fracture, as none of his allegations so plead.  (*See id.* at
15).

        As the parties recognize, in order to succeed, Plaintiff "will eventually need to
present clear and convincing evidence that [The Athletic's] article contained a
defamatory implication and that [The Athletic] acted with 'actual malice.'"  *Manzari v.
Assoc. Newspapers Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016) (citing *Kaelin v. Globe
Comm. Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998)).  "However, at the anti-SLAPP
stage, '[a] public figure who sues for defamation must establish a *probability* that he or
she can produce such clear and convincing evidence.'"  *Id.* (quoting *Overstock.com,
Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700, 61 Cal. Rptr. 3d 29
(2007)) (emphasis and modification in original).

        To show actual malice "in implied defamation cases, 'where a statement . . .
reasonably implies false and defamatory facts regarding public figures or officials,
those individuals must show that such statements were made with knowledge of their
false implications or with reckless disregard of their truth."  *Id.* at 891 (quoting
*Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)) (omission in original).  Recklessness
requires that there "'be sufficient evidence to permit the conclusion that the defendant
in fact entertained serious doubts as to the truth of his publication.'"  *Id.* (quoting *Time,
Inc. v. Pape*, 401 U.S. 279, 291–92 (1971).  The Ninth Circuit explained that "[t]his
standard ensures that publishers are not held liable for unintentional misstatements or
implications, which public figures later claim are defamatory."  *Id.* (citing *Howard v.
Antilla*, 294 F.3d 244, 252 (1st Cir. 2002)).

        Assuming solely for the purposes of argument, and without deciding, that the
article allegedly implies that Plaintiff fractured L.H.'s skull, Plaintiff has not
established a probability that he can produce clear and convincing evidence of The
Athletic's actual malice.  *See Manzari*, 830 F.3d at 889.  First, the Complaint does not
*specifically* allege that the authors of the article actually *knew* that any implications
were false, instead implying knowledge of falsity by alleging that the authors "knew
there were CT scans showing whether [L.H.] had a skull fracture" and "deliberately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

ignored those medical records to perpetuate the false message that [Plaintiff] fractured
[L.H.]'s skull."  (Complaint ¶¶ 52–53).

This implication, whether it be as to actual knowledge or putative recklessness
as to the truth, is controverted by the medical records themselves.  Plaintiff notes that
L.H.'s medical records state that the May 17, 2021 results of her CT scan concluded
"Bones/joints:  Unremarkable.  No acute fracture," but, as Defendants point out, a later
evaluation of June 3, 2021, also included in the petition, indicated a doctor's doubts as
to the conclusion of the CT scans, resulting in order of an MRI to rule out the
possibility of an "undetected" fracture.  (Palacios Decl. Ex. E at 73, 93–94).  It is not
clear how, given this factual uncertainty raised by L.H.'s petition, Plaintiff will be able
to show by clear and convincing evidence that The Athletic and the writers of the
article either knew of any falsity or "in fact entertained serious doubts as to the truth of
[the] publication."  *Manzari*, 830 F.3d at 891 (quoting *Time*, 401 U.S. at 291–92).  This
is compounded the article's specific recounting and relaying of the allegations *in
L.H.'s petition*, stating that "[i]n [L.H.]'s declaration . . . she stated that her medical
notes state that . . . there were signs of basilar skull fracture."  (Palacios Decl. Ex. A at
9).

It is also not clear the alleged ill will demonstrated by other The Athletic articles
can be attributed to the writers of this specific article.  *See Resolute Forest Prods., Inc.
v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (actual malice must
be alleged as to the person in the organization responsible for writing the statement).

The Court therefore cannot conclude that Plaintiff has adequately pled actual
malice, either via The Athletic and the writers of the article knowing that there were
false implications from the statement that "[i]n [L.H.]'s declaration . . . she stated that
her medical notes state that . . . there were signs of basilar skull fracture" or via their
reckless disregard as to the truth of any implications from that statement.  (Palacios
Decl. Ex. E at 9).

It is a closer question of whether or not Plaintiff could amend his Complaint so
as to adequately allege actual malice.  Although the Court has some doubts, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

cannot include that such amendment be impossible, and therefore this is not a basis
upon which to deny leave to amend.

### *Substantial truth*

As noted above, at the hearing, Defendants argued that leave to amend should be
denied because the article was substantially true, in that the CT scans found no fracture
of L.H.'s skull does not change that the entire article was substantially true.

In the MTS, Defendants argue they are not required to prove the truth of every
word of their article and that the assertion of the skull fracture would have had no
effect on the overall accuracy of the article or the impression of Plaintiff.  (*See* MTS at
16–17).  Defendants further argue that Plaintiff admitting to the conduct as a whole
indicate that any allegations of a fracture would not materially change the general
thrust of the allegations.  (*See id.* at 17–18).

Plaintiff argues that he denied all allegations of physical injury, that the article
accused him of a serious crime, and that had the article not so accused Plaintiff, an
average reader would plausibly have had a different impression of Plaintiff.  (*See* Opp.
to MTS at 16–18).

Defendants' Reply to MTS argues that even if the implication is true, it does not
implicate Plaintiff in a crime different or more serious from those alleged by L.H., and
as the petition implicates several crimes already, one additional would not have had a
significant difference.  (*See* Reply to MTS at 13–14).

As the parties appear to agree, the law "overlooks minor inaccuracies and
concentrates upon substantial truth," wherein a "statement is not considered false
unless it 'would have a different effect on the mind of the reader from that which the
pleaded truth would have produced.'"  *Masson v. New Yorker Mag.*, 501 U.S. 496,
516–17 (1991) (quoting R. Sack, Libel, Slander, and Related Problems 130 (1980)).  In
other words, what matters is "'the substance, the gist, the sting, of the libelous charge
to be justified.'"  *Id.* at 517 (quoting *Heuer v. Kee*, 15 Cal. App. 2d 710, 714, 59 P.2d
1063 (1936)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

The Court cannot conclude that any implication, if it does exist, substantially altered the overall impression given by the article.  The article summarizes the allegations set forth in L.H.'s petition.  (*See* Palacios Decl. Ex. A at 9).  As stated above, the article reports on L.H.'s allegations, and includes the statement that "[i]n [L.H.]'s declaration . . . she stated that her medical notes state that . . . there were signs of basilar skull fracture."  (*Id.*).  Even were the article in the first instance to have included that the CT scans subsequently found no fracture, it does not change the "gist" of the article concerning the allegations contained in L.H.'s petition – and the language of the article makes apparent it is detailing what L.H. filed in her petition. (*See id.* ("According to the woman's declaration . . ." and "In the woman's declaration, signed under penalty of perjury of California state laws, she said that her medical notes state . . .").

Plaintiff's arguments to the contrary are unavailing.  First, the state court judge's ruling on the petition did not occur until several months after the article was published, and there is no indication that the article's reporting of the initial petition filed by L.H. was somehow misleading about the subsequent full hearing held before a judge. Secondly, it is unclear how Defendant Knight's tweets are relevant, given that the initial tweet in the thread to which Defendant Knight replied included a news article written by a different media outlet.  Even so, the argument does not explain how the article's reporting of the allegations, which is hedged by making clear reliance on the petition itself, altered the overall impression of the article.

Accordingly, there is no indication the article was not substantially true. However, the Court also cannot conclude that there is no possible set of facts Plaintiff can allege sufficient to state a claim.  *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).  Further, "in light of the Ninth Circuit's holding that a Plaintiff in federal court be granted leave to amend their initial complaint before it is dismissed with prejudice under a state law anti-SLAPP statute," the Court must find that Plaintiff is entitled to one opportunity to amend his Complaint.  *Buttar*, 2022 WL 1215307, at *12 (citing *Verizon*, 377 F.3d at 1091).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

The MTS is therefore **GRANTED *with leave to amend*** as to Plaintiff's first
claim for defamation per se.

### b.  Tweets

Defendants additionally seek to strike Plaintiff's second claim for defamation
per se based on the tweets by Defendant Knight.  Defendants contend these tweets
were protected activity because social media constitutes a public forum, the tweets
were pure speech, and the speech concerned a matter of public interest.  (*See* MTS at
9–10).  Plaintiff does not appear to directly dispute this assertion, primarily contesting
that he fails to demonstrate a likelihood of prevailing on his claim.  (*See* Opp. to MTS
at 20).

There does not appear to be a reason to disagree that the tweets are protected
activity.  Accordingly, the question becomes whether Plaintiff has shown a probability
of prevailing.

### 2.  Probability of prevailing

Plaintiff must show a probability of prevailing on his claims for relief.  The
Court looks to whether the claims are legally sufficient and are supported by a prima
facie showing of facts to support a judgment in Defendants' favor if its evidence is
credited.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (second
stage of Anti-SLAPP analysis is "similar to the one courts make on summary
judgment, though not identical").

In determining whether Plaintiff has demonstrated his claims are "both legally
sufficient and supported by a sufficient prima facie showing of facts to sustain a
favorable judgment if the evidence submitted by the plaintiff is credited," the Court
must consider "the pleadings and evidentiary submissions of both the plaintiff and the
defendant."  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821, 123 Cal.
Rptr. 2d 19 (2002) (internal citations omitted).  "[A]lthough the court does not *weigh*
the credibility or comparative strength of competing evidence, it should grant the
motion if, as a matter of law, the [nonmoving party's] evidence supporting the motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

defeats the [moving party's] attempt to establish evidentiary support for the claim." *Id.*
(emphasis in original).

        The tweets at issue are attached to the Complaint and as follows:



(Complaint Ex. B at 1).



(Complaint Ex. C at 1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight



(Complaint Ex. D at 1).

Defendants argue that the tweets sent by Defendant Knight do not assert objective facts as set forth by relevant case law, which directs consideration of both the broad and specific contexts of the statement as well as whether the statement could be proved to be true or false.  (*See* MTS at 20–21 (citations omitted)).  Defendants argue all these factors indicate the tweets are non-actionable speech.

First, Defendants argue the broad contexts of the tweets indicates they are non-actionable, given readers expect strong opinion over objective fact on the Twitter platform, the tweets were part of an ongoing public debate, making them further likely to be understood as opinion, and other tweets sent by Defendant Knight support that she is expressing opinion.  (*See id.* at 21–23).

Next, Defendants contend the specific context of the tweets demonstrates that they are non-actionable opinions, as they were short and quick statements part of a rapid discussion with another Twitter user and in the context of responding to a news article concerning the underlying L.H. petition.  (*See id.* at 23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

Defendants also argue that the tweets cannot be shown to be true or false given they concern "what constitutes 'consent'" and the tweets do not imply facts but only debate the concept of what conduct can be consented to.  (*Id.* at 23–24).

Finally, Defendants argue that Plaintiff cannot show that the implications Plaintiff pleads were false as a matter of law, and that Plaintiff has not adequately pled actual malice because neither an improper motive nor possession of specific knowledge are sufficient to allege the requisite state of mind.  (*See id.* at 24–25).

Plaintiff disputes that the tweets were purely opinion.  (*See* Opp. to MTS at 20). Plaintiff contends Twitter is also a forum where facts are increasingly found, and as such tweets cannot be categorically painted as solely opinion, and further that opinions can form the basis for defamation if there are underlying assertions of facts.  (*See id.* at 21–23).

Plaintiff further argues that the specific context of the tweets supports the implication of fact that Plaintiff fractured L.H.'s skull, and that the tweets replying to another user were to correct fact, not discuss opinion.  (*See id.* at 23–24).  Plaintiff also disputes that the tweets cannot be proven true or false, that Defendants simultaneously argue that the tweets cannot be proven true or false and then argue that the tweets are in fact true, and that Plaintiff has adequately pled malice as Defendant Knight knew the claims were false or recklessly disregarded that the claims were false, or at minimum that Defendant Knight was motivated by her personal animus against Plaintiff sufficient to infer malice.  (*See id.* at 24–25).

In their Reply to MTS, Defendants contend Plaintiff the tweets were opinion, but that they assert that Plaintiff caused L.H.'s injury.  (*See* Reply to MTS at 16). Defendants argue the tweets were posted to rebut the assertion of a Twitter user who argued that consent can be given to certain forms of physical contact.  Defendant Knight's position is that she responded about the limits of consent to certain conduct, but did not claim specific knowledge of the underlying allegations.  (*See id.* at 16–17). Defendants further argue that the tweets were simply debating the legal meaning of consent, not establishing facts, that courts have considered the language used to

CIVIL MINUTES—GENERAL                                                              23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

determine whether facts are being asserted, and that all relevant facts were public and widely reported.  (*See id.* at 17–18).

Defendants also reassert that Defendant Knight's tweets were an unprovable opinion that one cannot consent to having her skull broken as well as agreeing that while Twitter is not exclusively full of opinions, it does not mean the context of the statements being published on Twitter should be disregarded.  (*See id.* at 18–20). Defendants conclude by arguing that even were it the case that the tweets imply some fact, Plaintiff cannot show that the implications are not substantially true, and that Plaintiff has failed to plead actual malice.  (*See id.* at 20–22).

As an initial matter, the Court notes that the MTS appears to largely challenge the legal sufficiency of the claim, as further evidenced by the similarity of the arguments as between the MTS and the MTD.  (*Compare* MTS at 20–25 *with* MTD at 20–25).  Accordingly, the Court analyzes the arguments under the standard of a motion to dismiss.  *See CoreCivic*, 2022 WL 3724307, at *7 (applying 12(b)(6) standard to anti-SLAPP) (citing *Planned Parenthood*, 890 F.3d at 834).

In ruling a motion to dismiss under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,'

_____
**CIVIL MINUTES—GENERAL**                                                      **24**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

In a defamation claim, "the challenged speech must be a statement of fact," and therefore "the threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'"  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)) (modification in original).  If no assertion of fact is implied, the claim is prohibited under the First Amendment.  *See id.* (citing *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009)).

The Ninth Circuit looks at the totality of the circumstances to determine this inquiry, after employing

> a three-factor test in resolving this question:  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false."

*Id.* (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

Any defamation about which Plaintiff complains is implied, not express – the tweets do not directly say, for example, "Plaintiff fractured L.H.'s skull," or "L.H. could not consent to the fact that Plaintiff fractured her skull," in contrast to other cases in this area of law where the defamation is rather explicit.  *See*, *e*.*g*., *id.* at 1153 ("crux of Herring's case" was comment that "OAN 'really literally is paid Russian propaganda'").

"California law recognizes that a defamatory statement can either be 'expressly stated or implied.'"  *Manzari*, 830 F.3d at 889 (quoting *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803, 163 Cal. Rptr. 628 (1980)).  The statement must be reasonably understood to imply the allegedly defamatory content to sustain a claim for implied defamation.  *See CoreCivic*, 2022 WL 3724307, at *7 (citing *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010)).

The threshold question, then, is whether the statement at issue, in this case the tweets, can be reasonably "'understood as implying the alleged defamatory content.'"  *Manzari*, 830 F.3d at 889 (quoting *Price*, 620 F.3d at 1003).

Plaintiff's interpretation is that "[t]here is no way to read Ms. Knight's tweets except as assertions that Mr. Bauer did fracture L.H.'s skull."  (Opp. to MTS at 20).  In consideration of the factors set forth by the Ninth Circuit, the Court must conclude that this is not the case.

**a.  Tenor of the work**

"'[T]he context of a statement may control whether words were understood in a defamatory sense.'"  *Herring*, 8 F.4th at 1153 (quoting *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987)).  "The broad context 'includes 'the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.''"  *Id.* (quoting *Knievel*, 393 F.3d at 1077).

The largest context available to consider is the forum where the statements were made – here, Twitter.  The parties appear to agree that Twitter generally contains both a mix of opinion and fact, and is relied on by reasonable people for a combination of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

both.  (*See* Opp. to MTS at 21, Reply to MTS at 19–20).  The Court also agrees that
"[b]ecause Twitter contains both opinion and news, it does not follow that statements
on Twitter are presumptively opinion."  *Unsworth v. Musk*, CV 18-8048-SVW (JCx),
2019 WL 4543110, at *5 (C.D. Cal. May 10, 2019) (footnote omitted).  The wide-
angle analysis of Twitter in and of itself therefore does not determine if the tweets were
likely to be perceived as opinions or facts, and accordingly, the Court "focus[es] one
level closer" to the more specific context of Defendant Knight's Twitter account
generally.  *Herring*, 8 F.4th at 1157.

There is some evidence that Defendant Knight's Twitter account included
statements of opinion generally, as illustrated by Defendants – for example,
Defendants submit several other tweets by Defendant Knight putatively expressing her
opinions.  (*See* Palacios Decl. Exs. N–P).  Exhibit N is reproduced as follows:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

(Palacios Decl., Ex. N at 288).

Exhibit O is reproduced as follows:



(Palacios Decl. Ex. O at 292).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-2062-MWF (AGRx)              Date:  December 5, 2022
Title:       Trevor Bauer v. The Athletic Media Co. & Molly Knight

The final Exhibit reads as follows:



(Palacios Decl. Ex. P at 298).

These tweets support that Defendant Knight's Twitter account did not consist solely of factual reporting and often included statements of opinion.  These tweets generally express Defendant Knight's opinion concerning the effects of Plaintiff playing in a baseball game after the accusations set forth by L.H.

The context of Defendant Knight's Twitter account, at least in the limited time surrounding the tweet at issue in this litigation, appears to indicate that Defendant Knight sometimes expressed opinions on Twitter.  However, there is no indication that Defendant Knight solely expressed opinion on her personal Twitter, and indeed was known for often sharing factual baseball news.  (*See*, *e.g*., Opp. to MTS at 24).  Overall, the Court finds the context to be neutral, because as with Twitter more generally, a variety of opinion and news was presented by Defendant Knight's account.

The Court therefore next considers the context of the three at-issue tweets themselves.  The complete context of the Twitter thread in which the first Tweet was posted is reproduced as follows, for the sake of completeness, as the version accompanying the Complaint did not include the initial tweet of the thread:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-2062-MWF (AGRx)                    Date:  December 5, 2022**
**Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight**



(Palacios Decl. Ex. B at 1).

The Court concludes that the context of the tweets themselves favors that a reasonable reader could conclude that the tweets implied an asserted fact—or, more precisely, relied on a fact as true:  that L.H.'s skull was fractured, and therefore any consent given to rough sex was invalid as to L.H.'s actual injuries.  The three tweets are premised on the baseline assumption that L.H. suffered a cracked skull, vitiating any consent given, even if that consent is evident from text messages.  Each tweet relies on this premise in the context of the discussion concerning L.H.'s alleged injuries, as the tweets would be nonsensical without that foundational fact – if L.H.'s skull were not cracked, the issue of whether a person can consent to having their skull

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                  Date:  December 5, 2022
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

cracked skull would be irrelevant, unless meant as an example of conduct to which consent could not be given.  That is not how the tweets would strike a reasonable reader.

At the hearing, Defendant Knight reiterated the argument from the papers that the tweets should be read in the context of a heated public debate on the scope of consent, as evidenced by her language discussing consent and the rapid-fire nature of her posts.  While it may be the case that the tweets were issued in the scope of this public discussion, that context does not detract from the plausible inference by a reasonable reader that Defendant Knight's opinion in the context of any such debate was premised on L.H.'s skull actually being fractured.

Taken in the broader context of Defendant Knight's tweets and Twitter in general, this factor supports finding that the general tenor of the work gave the impression that Defendant Knight was asserting an objective fact.  *See Herring*, 8 F.4th at 1157.

### b.  Specific language

The next step of the analysis is to consider "'the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation.'"  *Id.* at 1159 (quoting *Knievel*, 393 F.3d at 1077).  "'[L]oose, figurative, or hyperbolic language . . . negate[s] the impression' that the contested statement is an assertion of fact."  *Id.* at 1160 (quoting *Milkovich*, 497 U.S. at 21 (1990)) (alterations in original).  Further, where "the speaker fully discloses all relevant facts," "[s]tatements are less likely to be expressions of fact," and opinions based on facts fully disclosed are only punishable where the facts themselves are false.  *Id.* at 1159 (citing *Standing Comm. on Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman*, 55 F.3 1430, 1439 (9th Cir. 1995)).

Defendant Knight argued at the hearing that the tweets should be viewed as opinion because of the language used, which included short, incomplete sentences, colloquialisms, and rhetorical devices.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-2062-MWF (AGRx)                  Date:  December 5, 2022
Title:      Trevor Bauer v. The Athletic Media Co. & Molly Knight

The Court must find here that the language used does not negate an impression of assertion of an objective fact.  *Cf. Herring*, 8 F.4th at 1157.  The language does not appear hyperbolic or sensationalized, instead asserting a direct and succinct statement: consent cannot be given to having a skull fractured.  *Cf. id.*, *Glob. Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. Feb. 23, 2001) (hyperbolic language included statements like "This company has put it up your arse again this week," "I got info comin at you that will make you puke about this stock").   The directness of the statements therefore weighs in favor of finding that the statements by implication asserted an objective fact.  *See Herring*, 8 F.4th at 1157.

### c.  Provability

The final consideration is whether facts implied by the statements at issue can be proven true or false.  *See id.* at 1160 (citing *Unelko*, 912 F.2d at 1055).

 The underlying fact upon which the tweets are premised—that L.H.'s skull was broken—is very much provable as a binary:  either her skull was cracked or it was not.  While L.H. may have initially presented with signs of a cracked skull or basilar fracture, it appears that the CT scans demonstrated that her skull was **not**, in fact, cracked or fractured.  (*See* Palacios Decl. Ex. E at 73 ("CT Head without Contrast / Status:  Final result . . . FINDINGS: . . . Bones/joints:  Unremarkable.  No acute fracture").  The implied fact is therefore provable, and separately was proven, weighing against a finding that the statements did not assert an objective fact.

In totality, the factors fail to "negate the impression that the statement[s] [are] an assertion of objective fact." *Herring*, 8 F.4th at 1160.  Though the context of the tweets is generally neutral, the lack of hyperbolic or sensational language and provability of the implied fact would allow a reasonable reader to interpret the statements as implying an objective fact.  *See id.* at 1157 (citing *Unelko*, 912 F.2d at 1053).

Accordingly, the MTS is **DENIED** as to Plaintiff's second claim for defamation per se.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-2062-MWF (AGRx)**                **Date:  December 5, 2022**
Title:        Trevor Bauer v. The Athletic Media Co. & Molly Knight

As set forth above, the MTS appears to largely challenge the legal sufficiency of the claim.  The arguments as between the MTS and the MTD are functionally, if not actually, identical.  (*Compare* MTS at 20–25 *with* MTD at 20–25).  Accordingly, because Court analyzed the arguments in connection with the MTS under the standard of a motion to dismiss, the MTD is also **DENIED** as to Claim Two for the same reasons set forth above.  *See Planned Parenthood*, 890 F.3d at 834 (motion to strike based on alleged deficiencies in pleadings should be treated as motion under Rule 12(b)(6)) (citing *Rogers*, 57 F. Supp. 2d at 983).

## III.   <u>CONCLUSION</u>

The MTS is **GRANTED** *with leave to amend* as to Claim One and **DENIED** as to Claim Two.  The MTD is **DENIED** *as moot* as to Claim One and **DENIED** as to Claim Two.

Plaintiff must file any First Amended Complaint no later than **January 6**, **2023**.  Failure to file a First Amended Complaint by that date will be construed as election to stand on the current Complaint.

IT IS SO ORDERED.