DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com
ZOË N. McKINNEY (State Bar No. 312877)
  zoemckinney@dwt.com
865 S. Figueroa St., 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

THE NEW YORK TIMES COMPANY
DANA R. GREEN (*appearing pro hac vice*)
  dana.green@nytimes.com
620 8th Ave, 13th Fl.
New York, NY 10018
Telephone:  (212) 556-5290
Facsimile:  (212) 556-4634

Attorneys for Defendants
THE ATHLETIC MEDIA
COMPANY and MOLLY KNIGHT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TREVOR BAUER,<br><br>                     Plaintiff,<br><br>          vs.<br><br>THE ATHLETIC MEDIA COMPANY and MOLLY KNIGHT,<br><br>                     Defendants. | Case No. 2:22-cv-02062-MWF-AGR<br><br>**NOTICE OF MOTION AND SPECIAL MOTION OF DEFENDANTS THE ATHLETIC MEDIA COMPANY AND MOLLY KNIGHT TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT (C.C.P. § 425.16); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Request For Judicial Notice and Declaration of Dan Laidman with Exhibits A-V filed and [Proposed] Order lodged concurrently]<br><br>Hearing Date: March 20, 2023<br>Time:              10:00 a.m.<br>Courtroom:     5A<br><br>Action Filed: March 29, 2022 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 20, 2023, at 10:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 5A of the above-entitled court, located at 350 West 1st Street, Los Angeles, CA 90012, defendants The Athletic Media Company ("The Athletic") and Molly Knight ("Knight") (together, "Defendants") will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking Count One of the First Amended Complaint ("Amended Complaint" or "FAC") brought by Plaintiff Trevor Bauer ("Bauer").[1]

Because Count One for defamation per se arises from The Athletic's conduct in furtherance of the exercise of free speech about a matter of public interest, it falls within the scope of California Code of Civil Procedure § 425.16 (the "anti-SLAPP

---

[1] On December 5, 2022, this Court granted Defendants' SLAPP Motion as to Count One in Bauer's Complaint ("First SLAPP Motion"), involving an article published by The Athletic on June 30, 2021 ("Article"), but granted Bauer leave to amend. *See* Dkt. 45. The Court denied the SLAPP Motion with respect to Bauer's Count Two (involving three tweets Knight posted on Twitter on July 2, 2021 ("Tweets")). *Id.* Defendants have appealed the Court's ruling as to Count Two. *See* Dkt. 52; 9th Cir. No. 23-55107; *compare DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1016 (9th Cir. 2013) (reaffirming that "an order denying a motion to strike pursuant to California's anti-SLAPP statute is immediately appealable" in federal court); *with Greensprings Baptist Christian Fellowship Trust v. Cilley*, 629 F.3d 1064, 1068-69 (9th Cir. 2010) (order granting SLAPP motion with leave to amend "may not be appealed" in federal court).

Defendants' filing of the Notice of Appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Because district court proceedings on Count Two are stayed, pending resolution of Defendants' appeal (*id.*), this SLAPP Motion does not address that claim. Defendants expressly reserve all of the arguments made previously for why this claim should be stricken and/or dismissed. *See* Dkt. 20 (First SLAPP Motion, Notice at i-ii, MPA at 20-25); Dkt. 22 (Motion to Dismiss, Notice at i-ii; MPA at 20-25).

statute"). *See* Memorandum of Points and Authorities ("Memorandum"), Part III. Consequently, the burden shifts to Bauer to establish a probability that he will prevail on that claim. *See* C.C.P. § 425.16(b)(1); Memorandum, Parts IV-V. Bauer cannot meet his burden for each of the following independent reasons:

    1.    Bauer again failed to adequately plead compliance with California's retraction statute, Cal. Civ. Code § 48a; moreover, the FAC shows that The Athletic complied with its obligations under Section 48a.  For each of these independent reasons, Bauer was required to specifically plead special damages caused by the single alleged implication at issue, which he again failed to do.  Bauer's first claim for defamation per se therefore fails as a matter of law.  *See* Memorandum, Section IV.A.3.

    2.    Bauer failed to adequately plead facts demonstrating that the publication at issue is materially false, an essential element of a claim of defamation.  *See* Memorandum, Section IV.C.

    3.    Bauer's claim arises from an accurate report of the contents of a court filing, and therefore is barred by the "fair and true report" privilege under Cal. Civ. Code § 47(d) and the First Amendment.  *See* Memorandum, Section IV.D.

    4.    Bauer is a public figure, and therefore is required to allege facts sufficient to show, by clear and convincing evidence, that The Athletic published the single allegedly false implication with constitutional actual malice.  Because he failed to do so, Count One must be stricken. *See* Memorandum, Section IV.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 10, 2023.  This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Request For Judicial Notice with Declaration of Dan Laidman and Exhibits A-V, on any other matters of which this Court may take judicial notice; on all pleadings, files, and

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

For all the reasons set forth, Defendants The Athletic Company and Molly Knight respectfully request this Court to grant this Motion in its entirety, and strike Plaintiff Bauer's Count One in its entirety.[2]

DATED: February 14, 2023           DAVIS WRIGHT TREMAINE LLP
                                   KELLI L. SAGER
                                   DAN LAIDMAN
                                   DIANA PALACIOS
                                   ZOË N. McKINNEY

                                   THE NEW YORK TIMES COMPANY
                                   DANA R. GREEN


                                   By: */s/ Kelli L. Sager*_____
                                              Kelli L. Sager

                                   Attorneys for Defendants
                                   THE ATHLETIC MEDIA COMPANY
                                   and MOLLY KNIGHT

---

[2] This Court already has found that the SLAPP statute applies in this proceeding.  Because the same arguments presented in this Motion would be appropriately raised under F.R.C.P. 12(b)(6), dismissal would be warranted even if the SLAPP statute did not apply here.

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

# **TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................................ 1

    A.    Petition For Restraining Order Filed .................................................. 1

    B.    The Athletic's Article ........................................................................ 4

    C.    Post-Publication ................................................................................ 4

    D.    Bauer's Lawsuit ................................................................................ 6

III.  THE SLAPP STATUTE APPLIES TO BAUER'S CLAIMS ...................... 6

IV.   BAUER HAS NOT DEMONSTRATED A PROBABILITY OF
    PREVAILING ON THE MERITS .............................................................. 7

    A.    California's Retraction Statute Bars Bauer's Claim ........................... 7

        1.    Bauer Did Not Seek a Correction from the Publisher .............. 8

        2.    The Athletic Corrected the Article as Bauer Requested. ........... 9

        3.    Bauer Failed To Adequately Plead Special Damages.............. 10

    B.    Bauer's Pleaded Implication is Unreasonable As a Matter of
        Law. ................................................................................................ 12

    C.    Bauer Fails To Adequately Plead Material Falsity. .......................... 13

    D.    The Article Is Privileged as a Fair and True Report ......................... 16

    E.    Bauer Does Not Adequately Plead Actual Malice ............................ 17

        1.    Bauer Must Plead Actual Malice ........................................... 18

        2.    Bauer's Pleaded Facts Do Not Demonstrate Actual Malice.... 19

V.    CONCLUSION.......................................................................................... 21

CERTIFICATE OF COMPLIANCE .................................................................. 22

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Hearst Publ'g Co.*,
   120 F. Supp. 850 (S.D. Cal. 1954)........................................................................ 11

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2005) ............................................................................ 19

*Anschutz Ent. Grp., Inc. v. Snepp*,
   171 Cal. App. 4th 598 (2009) ........................................................................ 7, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 9

*Baral v. Schnitt*,
   1 Cal.5th 376 (2016) .......................................................................................... 12

*Bauer v. Hill*,
   2022 U.S. Dist. LEXIS 212819 (C.D. Cal. Nov. 23, 2022)................................ 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 9

*Blatt v. Pambakian*,
   2021 WL 4352329 (9th Cir. Sept. 24, 2021) ..................................................... 14

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ........................................................................... 18

*Church of Scientology v. Flynn*,
   744 F.2d 694 (9th Cir. 1984) ............................................................................. 13

*Couch v. San Juan Unified Sch. Dist.*,
   33 Cal. App. 4th 1491 (1995) ............................................................................ 13

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975)........................................................................................... 16

*Crane v. Ariz. Republic*,
   972 F.2d 1511 (9th Cir. 1992) ........................................................................... 17

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Dorsey v. National Enquirer*,
    973 F.2d 1431 (9th Cir. 1992) ....................................................................... 14, 17

*Erlich v. Etner*,
    224 Cal. App. 2d 69 (1964) ................................................................................... 11

*Fisher v. Larsen*,
    138 Cal. App. 3d 627 (1982) ................................................................................. 12

*Forsher v. Bugliosi*,
    26 Cal. 3d 792 (1980) ........................................................................................... 13

*Freedom Newspapers, Inc. v. Superior Court*,
    4 Cal. 4th 652 (1992) .............................................................................................. 8

*Gang v. Hughes*,
    111 F. Supp. 27 (S.D. Cal. 1953) ................................................................... 11, 12

*Gomes v. Fried*,
    136 Cal. App. 3d 924 (1982) ................................................................................. 11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ........................................................................................ 18, 20

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ................................................................................... 6

*Hoffman v. Cap. Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) .............................................................................. 18

*Hoffman v. Washington Post Co.*,
    433 F. Supp. 600 (D.D.C. 1977) ........................................................................... 20

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) ................................................................................. 13

*Leeb v. Delong*,
    198 Cal. App. 3d 47 (1988) ..................................................................................... 8

*Mann v. Quality Old Time Serv., Inc.*,
    120 Cal. App. 4th 90 (2004) ................................................................................. 12

*Martin v. Wells Fargo Bank*,
    2018 U.S. Dist. LEXIS 229513 (C.D. Cal. Jan. 18, 2018) ................................... 12

vi

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Masson v. New Yorker Magazine,*
    501 U.S. 496 (1991) ........................................................................... 14

*McClatchy Newspapers v. Superior Court,*
    189 Cal. App. 3d 961 (1987) .............................................................. 17

*New Times, Inc. v. Isaacks,*
    146 S.W.3d 144 (Tex. 2004) ............................................................... 20

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ........................................................................... 19

*Nunes v. CNN,*
    520 F. Supp. 3d 549 (S.D.N.Y. 2021) ................................................ 11

*Pridonoff v. Balokovich,*
    36 Cal. 2d 788 (1951) ........................................................................ 11

*Reader's Digest Ass'n v. Superior Court,*
    37 Cal. 3d 244 (1984) ........................................................................ 18

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) .............................................. 18

*Shahid Buttar for Cong. Comm. V. Hearst Commc'n,*
    2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ................................. 8, 20

*Sipple v. Foundation For National Progress,*
    71 Cal. App. 4th 226 (1999) .............................................................. 14

*South Sutter, LLC v. LJ Sutter Partners, L.P.,*
    193 Cal. App. 4th 634 (2011) ............................................................... 7

*Southard v. Forbes,*
    588 F.2d 140 (5th Cir. 1979) ............................................................. 13

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ............................................................. 10

*Tiedemann v. Superior Ct.,*
    83 Cal. App. 3d 918 (1978) ............................................................... 17

*Tiwari v. NBC Universal Inc.,*
    2011 WL 5079505 (N.D. Cal. Oct. 15, 2011) ............................... 14, 15

vii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Todd v. Lovecruft*,
  2020 U.S. Dist. LEXIS 2309 (N.D. Cal. Jan. 6, 2020) ....................................... 11

*Twin Coast Newspapers, Inc. v. Superior Court*,
  208 Cal. App. 3d 656 (1989) ............................................................................... 10

*Wynn v. Chanos*,
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................................. 18

**Statutes**

California Civil Code
  § 47(d) ................................................................................................................... 16
  § 48a .......................................................................................................... 8, 10, 11
  § 48a(a) .................................................................................................................... 7
  § 48a(a) .................................................................................................................... 7
  §§ 48a(a)-(b) ........................................................................................................... 7
  § 48a(b) .................................................................................................................. 10
  § 48a(c) .................................................................................................................... 9
  § 48a(d)(2) ............................................................................................................. 11
  § 48a(d)(5) ............................................................................................................... 7

Code of Civil Procedure
  § 425.16(a) ............................................................................................................... 7
  § 425.16(e)(2)-(4) .................................................................................................... 7

**Rules**

Federal Rules of Civil Procedure 9(g) .................................................................... 11

Federal Rules of Civil Procedure 12(b)(6) ............................................................... 6

**Constitutional Provisions**

First Amendment ..................................................................................................... 16

**Other Authorities**

A. Becker, et al., *Battle Sign*, National Library of Medicine (June 27,
  2022), *available at* https://tinyurl.com/9adjxmty ............................................... 3

Dictionary of Modern Medicine ............................................................................... 3

McGraw-Hill Concise Dictionary of Modern Medicine (2002) ............................... 3

viii

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Medical Dictionary for the Health Professions and Nursing (2012) .......................... 3

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.     SUMMARY OF ARGUMENT

This Court previously found that Plaintiff Trevor Bauer failed to meet his burden of pleading that the Article at issue, which reported on court records containing allegations that Bauer had violently assaulted a woman, was materially false, or that the allegedly false implication was published with actual malice. The Court also held that the California retraction statute barred Bauer's claim. Dkt. 45 ("Order").

Bauer's amended pleading, which attempts to address the multiple deficiencies identified by this Court, fares no better. Bauer still cannot evade the protections of California's retraction statute, and fails to adequately allege special damages. For this reason alone, his defamation claim fails.

Independently, Bauer's claim fails because the only purportedly defamatory implication in the FAC cannot be reasonably derived from the Article; nor is the purported implication materially false in any event. The Article also is absolutely privileged as a fair report of court records. Finally, Bauer again failed to adequately plead constitutional actual malice. For each of these reasons, this Court should strike Count I of Bauer's FAC with prejudice.

## II.     STATEMENT OF FACTS

### A.     Petition For Restraining Order Filed

On June 28, 2021, L.H.[3] filed a petition seeking a restraining order against Bauer, a famous professional baseball player. FAC ¶¶ 9, 15. Her Petition included a sworn declaration detailing graphic allegations of sexual violence by Bauer. *See* Declaration of Dan Laidman ("Laidman Decl.") Ex. E ("Petition").

L.H. alleged that during their first encounter, on April 21, 2021, she consented to sex being "a little rough," but Bauer grossly exceeded that consent, by "putting his fingers down [her] throat," choking her "unconscious," and having

---

[3] As before, Defendants refer to the complainant by her initials only.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"extremely painful" anal sex with her while she was unconscious, among other abuses.  *Id.* at 28-29.  L.H. alleged that after she regained consciousness and told Bauer to stop, he did, but he later joked about the pain he caused her.  *Id.* at 29-30.

During the second encounter, on May 15-16, 2021, L.H. alleged that Bauer engaged in an even more brutally violent attack, which included choking her until she was unconscious (twice), and repeatedly punching her in the face and head with a closed fist.  *Id.* at 30-31.  According to L.H.'s declaration, Bauer's pummeling of her caused "terrible pain behind [her] ears"; she "tasted blood," her "lip was split," her "whole body hurt," and she "could not even tell if he was having sex with [her]."  *Id.* at 31.  Bauer then punched her repeatedly in the vagina.  *Id.*  L.H. alleged that Bauer only stopped his assault when she started "crying and violently shaking."  *Id.*  Afterward, Bauer told her that he had punched her in the buttocks while she was unconscious; she also alleged that he scratched and punched her face while she was unconscious.  *Id.* at 32.

Following the attack, L.H. alleged that she had two black eyes, a swollen jaw and cheekbones, scratches on her face, large bruises on her face, lips, and gums, a split lip and large bump on her head, "severe black bruising" in her vaginal area, and bruises to her buttocks.  *Id.*  The next day, she "threw up violently throughout the day and had severe headaches."  *Id.* at 33.  She then went to an emergency room, where she said "medical notes" described her as having "significant head and facial trauma," and "signs of a basilar skull fracture."  *Id.* at 33; *see also id.* at 78, 104.  L.H.'s declaration stated that CT scans were performed on her "brain, face, and neck"; she did not state the results of the scans, but alleged she was "diagnosed with an acute head injury and assault by manual strangulation."  *Id.* at 33.

Medical notes from L.H.'s initial examination, which were filed with the Petition, are consistent with her declaration:  the notes described her symptoms on admission as including "[s]evere headache," "[v]omiting x 2 or more," and "[s]igns

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of basilar fx (raccoon eyes, Battle's sign)."[4] *Id.* at 78, 104.  The medical records further stated that a C.T. scan found "no acute fracture" (*id.* at 99), but that L.H. ultimately was diagnosed with an "acute head injury" and "assault by manual strangulation." *Id.* at 72, 79, 98, 105; *see also id.* at 33.[5]

L.H. reported the incident to the police, and underwent a sexual assault exam. *Id.* at 33-34.  Text messages attached to the Petition show that Bauer was aware that L.H. was injured, and repeatedly expressed concern about her health.  *Id.* at 82-90.

On June 3, 2021, L.H. had a follow-up examination with a doctor.  Her declaration stated a "follow up MRI was ordered," and she was referred for a "neurological consult."  *Id.* at 35.  Medical records from that examination reflect that L.H. suffered a "concussion," and was experiencing "Residual Sx: HA, dizziness, tinnitus, photophobia, sleepiness, and L jaw pain."[6]  *Id.* at 94.  They also state that the doctor "[s]uspected residual healing contusion but will r/o undetected Fx on CT."[7]  *Id.*  Translated: he wanted to rule out a fracture potentially undetected by the CT scans, so he ordered MRI scans of L.H.'s brain and face.  *Id.* at 93.  The

---

[4] "Fx" is a common medical abbreviation for fracture.  McGraw-Hill Concise Dictionary of Modern Medicine (2002). "Battle's sign" is a type of bruising indicative of a basilar skull fracture.  A. Becker, et al., *Battle Sign*, National Library of Medicine (June 27, 2022), *available at* https://tinyurl.com/9adjxmty.

[5] The FAC alleges that Defendants had access to these medical records because they were filed with L.H.'s Petition.  ¶¶ 59-62.  But it also includes an email exchange with The Athletic and Bauer's representatives indicating that Defendants did *not* have these records, or the C.T. scan results, until *after* the Article was published.  FAC Ex. C at 2.  For the reasons discussed below, Bauer's claims fail either way.

[6] "Sx" is a common medical abbreviation meaning "symptoms." Dictionary of Modern Medicine, *supra* note 4.  "HA" is a common medical abbreviation for "headache." Medical Dictionary for the Health Professions and Nursing (2012).

[7] "r/o" is a common medical abbreviation meaning "rule out." McGraw-Hill Concise Dictionary of Modern Medicine (2002).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Petition does not include the results of an MRI.

**B.     The Athletic's Article**

On June 30, 2021, The Athletic published an article by journalists Brittany Ghiroli and Katie Strang ("Journalists"), titled "Graphic details, photos emerge in restraining order filed against Dodgers pitcher Trevor Bauer."  Laidman Decl. Ex. A ("Article").  The Article closely tracked L.H.'s declaration, quoting it extensively.  Among other things, the Article reported that in "the woman's declaration, signed under penalty of perjury of California state laws, she said that her medical notes state that she had 'significant head and facial trauma' and that there were signs of basilar skull fracture."  *Id.* at 9.  The Article later stated:  "[L.H.] said she underwent rapid CT scans for her brain, face and neck."  *Id.* at 11.  The Article then reported that, according to L.H.'s declaration, "she was diagnosed with an acute head injury and assault by manual strangulation."  *Id.*

The Article explained that the Petition was *ex parte*, meaning Bauer had not yet had an opportunity to respond in court.  But the Journalists sought comment from Bauer, and included a lengthy statement from his agent that Bauer's acts were "100% consensual," and that he possessed text messages from L.H. "asking for 'rough' sexual encounters involving requests to be 'choked out' and slapped in the face."  *Id.*  The statement from Bauer's agent did not deny L.H.'s allegations of violence.[8]

**C.     Post-Publication**

On June 30, 2021, after the Article was published, Melanie Wadden (Bauer's representative) emailed The Athletic's Chief Content Officer, Paul Fichtenbaum, and Managing Editor Emma Span.  FAC ¶¶ 65, 67, & Ex. C. at 5-6.  Wadden's

---

[8] The factual background involving Count Two, which involves the Tweets, was included in Defendants' prior SLAPP Motion.  Dkt. 20 at 6-7.  Because that claim is on appeal, the Tweets are not addressed in the current Motion.

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

email did not dispute Bauer's violent conduct; instead, she focused on whether the violence was consensual.  Wadden asked that the Article be revised to include text messages between L.H. and Bauer discussing erotic asphyxiation and "slaps to the face."  Span responded the same day, declining to add the texts but stating: "If anything in the article is factually incorrect, let us know and we will adjust. However, the article as currently written and reported is fair and accurate to the best of our knowledge."  FAC Ex. C at 5.

Two days later, Wadden wrote to Span again, and for the first time complained about the line in the Article stating "that there were signs of basilar skull fracture," asserting that "a CT scan is included as a follow-up to her initial visit which clearly states **she does NOT have a skull fracture**."  *Id.* (original emphasis).  Span responded that The Athletic did not have the referenced medical record, and asked for a copy.  *Id.* at 3.  She also pointed out that the Article quoted L.H.'s declaration, which stated "there were signs of basilar skull fracture" and also included her final diagnosis of "an acute head injury and assault by manual strangulation."  *Id.* at 4.

Wadden then sent Span the medical records from the Petition, which referenced the CT scan results, asking for the first time that the Article be corrected to say that L.H. did not have a skull fracture.  *Id.* at 3.  Later that day, Span responded:  "Having looked over the records, we believe our story is accurate as currently phrased."  *Id.* at 2.

Late that night, Bauer's attorney, Blair Brown, sent an email and a letter to Fichtenbaum and Span.  FAC Ex. E at 2 & Ex. D (the "Demand Letter").  Brown argued that the Article "creates the impression that Mr. Bauer caused [L.H.] to suffer a skull fracture, when in fact she had no such injury."  *Id.* at 2.  He demanded they correct the Article "by stating that the CT scan of [L.H.] found no fractures" and asked them to "provide this letter to *The Athletic's* legal advisor."  *Id.* at 3.

The next day, legal counsel for The Athletic, David Ortenberg, responded

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that the Article "clearly and truthfully sets out the facts at issue":  the medical records showed that L.H. presented with "'signs of a basilar skull fx.' Nowhere in our reporting do we state that [L.H.] suffered skull fracture."  FAC Ex. E at 3. Nevertheless, "despite not having any obligation to make any further changes to our reporting, we have updated our article …. It now notes that an initial CT scan of [L.H.] did not present an acute fracture."  *Id.*

The revised Article included the following statement:

> (***Update***: After publication, Trevor Bauer's representatives emphasized that medical records showed that while the woman was initially diagnosed with signs of a basilar skull fracture, a subsequent CT scan found no acute fracture.)

FAC Ex. A at 2.

**D.     Bauer's Lawsuit**

On March 29, 2022, Bauer commenced this action, asserting one count of defamation *per se* against The Athletic arising from the Article, and another count of defamation *per se* based on tweets posted by former Athletic journalist Molly Knight. Defendants filed a SLAPP Motion, which the Court granted in part, striking Count One with leave to amend.  Dkt. 45.[9]  Plaintiff filed his FAC on January 31, 2023.

**III.     THE SLAPP STATUTE APPLIES TO BAUER'S CLAIMS**

As this Court previously held, Bauer's claims fall within the scope of the SLAPP statute, and are properly analyzed under the F.R.C.P. 12(b)(6) standard to determine whether a claim has been stated.  Dkt. 45; *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-56 (9th Cir. 2021) (courts must "'construe[]' the anti-SLAPP statute broadly'"; striking defamation complaint with prejudice by applying

---

[9] The Court denied the SLAPP Motion as to Count Two.  Because that ruling is now on appeal, the Tweets are not discussed in this Motion.  *See supra* note 8; Dkt. 52.

12(b)(6) standard) (quoting C.C.P. § 425.16(a)).  This holding applies equally to Count One in the FAC, because Bauer's claim still arises entirely from the content of the Article – an online publication about a pending legal proceeding where a famous athlete was accused of sexual assault.  C.C.P. § 425.16(e)(2)-(4); Dkt. 20 (SLAPP Motion at 18-20); *see also South Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal. App. 4th 634, 658 (2011) (prior ruling that SLAPP statute applied to complaint had preclusive effect in motion directed at new pleading arising from same relevant facts).

Because the SLAPP statute applies to Count One, the only issue before this Court is whether Bauer's amended pleading states a defamation claim that can survive a motion to dismiss.  Order at 20.  It does not.

## IV.   BAUER HAS NOT DEMONSTRATED A PROBABILITY OF PREVAILING ON THE MERITS

### A.   California's Retraction Statute Bars Bauer's Claim

This Court previously found that Bauer failed to plead adequate compliance with California's retraction statute and failed to sufficiently plead special damages. Order at. 9-14.  Bauer's attempt to remedy these defects by adding new allegations and exhibits concerning his communications with The Athletic simply reinforce this Court's prior ruling.

The retraction statute requires a plaintiff suing a news organization for defamation to demand a correction before bringing a lawsuit.  Civ. Code § 48a(a), (d)(5).  It specifies the plaintiff must serve "upon the publisher" "a written notice specifying the statements claimed to be libelous and demanding that those statements be corrected" within 20 days of learning of the publication.  *Id.* § 48a(a). If the plaintiff fails to make a timely demand, ***or*** if the defendant publishes a timely correction, the plaintiff is limited to recovering special damages.  *Id.* §§ 48a(a)-(b). Failure to adequately plead special damages requires the claim to be stricken. *Anschutz Ent. Grp., Inc. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**1.**     **Bauer Did Not Seek a Correction from the Publisher**

Bauer claims he met this statutory requirement by sending the Demand Letter.  FAC ¶ 67 & Ex. D.  But that letter was sent to two editors, with a request that they send it to "*The Athletic's* legal advisor."  *Id.* Ex. D at 3.  Bauer does not claim that he asked them to share his demand with the publisher, nor does he allege that he made any effort to send his demand to the publisher directly.

Instead, Bauer argues that the company should be treated as the "publisher" for purposes of the retraction statute, and service on its employees should be deemed sufficient.  FAC ¶ 71.  This approach is contrary to law.  Order at 10-13 (finding such allegations inadequate to comply with Section 48a); *Shahid Buttar for Cong. Comm. V. Hearst Commc'n* ("*Buttar*"), 2022 WL 1215307, at *11 (N.D. Cal. Apr. 25, 2022) (serving demand on reporter insufficient); *Leeb v. Delong*, 198 Cal. App. 3d 47, 52 n.2 (1988) (serving demand on editor insufficient).

Bauer then asserts that service should be deemed sufficient because The Athletic "did not publicly designate a single individual as its 'publisher' or otherwise make available to the public information on how to contact a specific 'publisher' for purposes of seeking a retraction under section 48a."  FAC ¶ 73.  But the retraction statute contains no such requirement.  Moreover, Bauer was not required to identify the publisher by name, as this Court previously noted.  Order at 12.  He could have addressed his demand to the "publisher," or asked the editors to forward the letter to the publisher − just as he asked them to forward it to counsel – but he did neither.

This Court also observed that the statute might be satisfied if Bauer sent a correction demand to individuals "designated by the publisher to receive notices," or if it were shown "the publisher acquired actual knowledge of the demand letter."  Order at 13 (*citing Freedom Newspapers, Inc. v. Superior Court*, 4 Cal. 4th 652, 658 (1992)).  But instead of pleading any *facts* on either point, Bauer simply parrots the Court's language, alleging Span and Fichtenbaum "are agents … to whom that

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

corporate entity delegated the authority," and that "on information and belief" his Demand Letter "was known to the publisher."  FAC ¶¶ 71-75.  This bare recitation of the legal standard is insufficient to state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "formulaic recitation of the elements of a cause of action" does not satisfy federal pleading requirements); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("mere conclusions … are not entitled to the assumption of truth.").

The only *facts* that Bauer pleads are that his representative sent a Demand Letter, which demonstrates nothing about delegated authority, and that The Athletic's editorial guidelines direct employees to consult "editorial leadership," "the appropriate managing editor and/or the Chief Content Officer" before making changes to an article.  FAC ¶¶ 71-72 (linking to https://theathletic.com/edit-guidelines/).  The guidelines are inward-facing, directing journalists about the initial process they should follow concerning corrections; they do not instruct third parties to write to "editorial leadership," nor do they suggest the publisher has delegated statutory authority to those unnamed individuals with those titles.

Finally, Bauer argues that the correction itself somehow proves that the publisher had constructive notice.  FAC ¶ 75.  But this circular reasoning would deprive publishers of the correction statute's protections if any changes are made to an article, undermining the notice requirement and frustrating the statute's purpose to facilitate an opportunity to correct errors where appropriate.

### 2.   The Athletic Corrected the Article as Bauer Requested.

Even if the Demand Letter satisfied the retraction statute,[10] Bauer's own

---

[10] The statutory protections are triggered when a correction is published, regardless of whether a compliant demand was made.  Civ. Code § 48a(c) (correction published "before receipt of a demand … shall be of the same force and effect" as one issued in response to a proper request).  Consequently, The Athletic's publication of the correction is not an acknowledgement that Bauer's demand complied with the statute – but it does trigger *Bauer's* obligation to plead and prove that he suffered special damages.

pleadings show that The Athletic made the very correction he requested.  The Demand Letter asserted that "a CT scan attached to the petition found that there was '[n]o acute fracture'" and asked that the Article "be updated and corrected to include the results of the CT scan." *Id.* Ex. D at 2.  *See also id.* at 3 ("I demand that The Athletic correct its article by stating that the CT scan of [L.H.] found no fractures."). The Athletic did exactly that, by adding the following paragraph:

> (***Update***: After publication, Trevor Bauer's representatives emphasized that medical records showed that while the woman was initially diagnosed with signs of a basilar skull fracture, a subsequent CT scan found no acute fracture.)

FAC ¶ 70 & Ex. A.

This clarification, published within *one day* of Bauer's request, satisfied Section 48a, which requires only that a correction be published "in substantially as conspicuous a manner … as were the statements claimed to be libelous … within three weeks after service." Civ. Code § 48a(b).  Where, as here, a publication corrects an alleged inaccuracy in the same location in which the original statement appeared, Section 48a is satisfied.  *E.g.*, *Twin Coast Newspapers, Inc. v. Superior Court*, 208 Cal. App. 3d 656, 662-63 (1989) (retraction published in same location, addressing grounds plaintiff identified, satisfied Section 48a as a matter of law).[11]

### 3.    Bauer Failed To Adequately Plead Special Damages.

Because Bauer did not make a demand on the publisher, and independently because The Athletic published the requested correction despite the non-compliant demand, Bauer is limited to recovering special damages.  Civ. Code § 48a; Order at 14.  Failure to adequately plead such damages requires his claim to be stricken.

---

[11] Bauer's conclusory allegation that The Athletic "did not correct the Article" (FAC ¶ 70) must be disregarded, because it is contradicted by the FAC's own exhibits.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (at motion to dismiss stage, court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Order at 14 (citing *Anschutz*, 171 Cal. App. 4th at 643).

Special damages are damages to "property, business, trade, profession, or occupation … and no other." Civ. Code § 48a(d)(2). These damages "must be pled and proved precisely," *Gomes v. Fried*, 136 Cal. App. 3d 924, 938 (1982). This means alleging "the specific manner in which [the plaintiff] lost business as a result of the defamation." *Gang v. Hughes*, 111 F. Supp. 27, 29 (S.D. Cal. 1953) (granting motion to dismiss for failure to plead special damages). Special damages also "must be specifically stated" under federal pleading rules. *See* F.R.C.P. 9(g); *Nunes v. CNN*, 520 F. Supp. 3d 549, 560-61 (S.D.N.Y. 2021) (dismissing claim for failure to plead special damages under Section 48a and Rule 9(g); allegation "that proffered neither a specific damages figure nor a method of computing the damages was insufficient"). "A general allegation of the loss of a prospective employment, sale, or profit will not suffice." *Todd v. Lovecruft*, 2020 U.S. Dist. LEXIS 2309, at *67 (N.D. Cal. Jan. 6, 2020) (*citing Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951)).

Here, ambiguous "general allegations" are all that Bauer has provided, despite being given an opportunity to amend. The FAC asserts "loss of earnings from certain brand partners who disassociated with Mr. Bauer following the Article … loss of earnings from access to the sports memorabilia market, and a decreased demand for Mr. Bauer's merchandise and professional branding." FAC ¶ 129. Bauer also pleads he hired unspecified "professionals" to rehabilitate his reputation in unspecified ways. *Id.* These ambiguous allegations are inadequate.

*First,* Bauer does not identify any of the "brand partners" who supposedly stopped doing business with him, or the nature of those transactions. *Anderson v. Hearst Publ'g Co.*, 120 F. Supp. 850, 852 (S.D. Cal. 1954) ("[w]hen special damage is claimed, the nature of the special loss or injury must be particularly set forth"; under California law, "it is well settled that the specific facts which are said to give rise to special damages must be pleaded"); *Erlich v. Etner*, 224 Cal. App. 2d

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

69, 73-74 (1964) ("plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived"); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004) (plaintiff must "identify particular customers and transactions of which it was deprived as a result of the libel"), *disapproved in part on other grounds*, *Baral v. Schnitt*, 1 Cal.5th 376 (2016).  Bauer also does not plead any amount of loss, or provide any method for computing his alleged damages, as is required. FAC ¶ 129. *See, e.g.*, *Martin v. Wells Fargo Bank*, 2018 U.S. Dist. LEXIS 229513, *6 (C.D. Cal. Jan. 18, 2018) (dismissing where plaintiff provided "no estimation of the amount" of special damages).

*Second*, Bauer's special damages also must be caused by the alleged defamation – here, the alleged implication of a fractured skull – and not by anything else in the Article, or other events – such as Bauer's lengthy suspension.  *See Hughes*, 111 F. Supp. at 29 (plaintiff must allege "the specific manner in which he lost business *as a result of the defamation*") (emphasis added); *Fisher v. Larsen*, 138 Cal. App. 3d 627, 635-36 (1982) (libel claim dismissed where other negative press coverage precluded finding that statements at issue caused damage).  Here too, Bauer fails to meet his pleading burden.  He offers only chronology, alleging that he lost opportunities "following the Article," without specifying whether that was within days, weeks, or even months after publication.  FAC ¶ 129.  He does not allege causation, let alone causation linked to the one alleged implication at issue, and the vagueness of his own pleadings does not even permit such an inference. Because Bauer failed again to adequately plead special damages, his claim based on the Article must be struck, with prejudice.

**B.     Bauer's Pleaded Implication is Unreasonable As a Matter of Law.**

Count One is premised entirely on Bauer's theory that "by omitting [the CT scan] results, the Article conveyed the false message that the Complainant had suffered a skull fracture."  FAC ¶ 5.  In a defamation-by-implication action, it is the

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plaintiff's burden to demonstrate an alleged inference is reasonable. *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019). This is a question of law for the court. *Couch v. San Juan Unified Sch. Dist*., 33 Cal. App. 4th 1491, 1500 (1995). It must be evaluated from a natural reading of the Article; the court must "refrain from scrutinizing what is not said to find a defamatory meaning which the article does not convey to a lay reader." *Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (citation omitted).

Bauer's pleaded implication here is unreasonable on its face: any lay person understands, particularly in reading a story that proceeds chronologically, that initially having "signs" of a particular condition does not mean that was the final diagnosis. That is particularly true here, where the purported "implication" is at odds with the Article's description of L.H.'s injuries. *Compare* Laidman Decl. Ex. A at 11 (reporting L.H.'s declaration referenced medical notes stating that she had "signs of basilar skull fracture"); *id.* (Article later cites L.H. declaration saying she was diagnosed with "an acute head injury and assault by manual strangulation") *with* Laidman Decl. Ex. E at 79 ("Final diagnoses: Acute head injury. Assault by manual strangulation.").

Because the Article cannot reasonably be read as stating affirmatively that Bauer fractured L.H.'s skull, which is the *only* purported falsehood at issue, his claim should be struck. *Forsher v. Bugliosi*, 26 Cal. 3d 792, 805-06 (1980) (upholding dismissal of implication claim at pleading stage); *Southard v. Forbes*, 588 F.2d 140, 144 (5th Cir. 1979) (rejecting implied defamation claim when "the innuendo [plaintiffs] claim to impart to the Forbes article [is] a meaning which the article itself denies").

## C.     Bauer Fails To Adequately Plead Material Falsity.

In granting Defendants' prior SLAPP motion, this Court held that even if the Article could be read as implying that Bauer fractured L.H.'s skull, his defamation claim would fail because he did not meet his burden of proving material falsity.

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Order at 19.  Both sides agreed, and this Court correctly found, that controlling law concentrates on "'substantial truth,' wherein a 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Id.*, citing *Masson v. New Yorker Magazine,* 501 U.S. 496, 516-17 (1991) (internal citations omitted).)  When evaluating whether the "gist and sting" of the item at issue is materially false, courts consistently have held that libel claims fail as a matter of law where, as here, the alleged false statement does not *materially* change the meaning of the nonactionable portions of the publication.[12]

For example, in *Tiwari v. NBC Universal Inc.*, 2011 WL 5079505 (N.D. Cal. Oct. 15, 2011), the court held that a report by the program "To Catch a Predator" was substantially true in saying that the plaintiff was convicted of felony attempted lewd and lascivious acts with a child, although he was only convicted of a misdemeanor that was not a sexual offense (and later was reduced to an infraction). *Id.* at *2, 15.  The court found "even if the actual truth had been reported," "a

---

[12] The same "gist or sting" standard applies both to the requirement that defamatory statements be materially false, and to evaluating whether statements are privileged accounts of judicial proceedings.  *See Tiwari*, 2011 WL 5079505, at *13-15; Section IV.D, *infra.*  In the fair report privilege context, courts routinely have held, under circumstances analogous to this case, that allegedly false statements did not materially change the meaning to an average reader.  *E.g.*, *Dorsey v. National Enquirer*, 973 F.2d 1431, 1436-37 (9th Cir. 1992) (article saying plaintiff's ex-partner was "100 percent convinced" he had AIDS "based on a five-year 'intensive' investigation" did not materially alter meaning of court records saying only that she believed he had AIDS "on information and belief"); *Blatt v. Pambakian*, 2021 WL 4352329, at *1-2 (9th Cir. Sept. 24, 2021) (news reports with "lurid details" of how plaintiff "groped and sexually harassed" defendant "convey the same gist or sting" as legal complaint with only conclusory allegations and no details); *Sipple v. Foundation For National Progress*, 71 Cal. App. 4th 226, 245 (1999) (details in article of how plaintiff struck his wife "expanded on the theme" from court records containing vague references to abuse, but did not alter the substance "such that a reader would be affected differently").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

viewer would have no different view of" the plaintiff, given the rest of the program, which accurately depicted him arriving at a location after being "lured" there with the possibility of having inappropriate contact with a minor.  *Id.* at *2, 15.

The same is true here:  the allegedly incorrect information in the Article (the omission of the CT scan result) "cannot be viewed in isolation apart from its context."  *Id.*  Including it would not have materially changed a reasonable reader's view of Bauer, given all of the concededly non-actionable portions of the Article −  which describe the extreme physical violence he allegedly inflicted on L.H.

To wit:  Bauer is a professional athlete who was accused of choking a woman into unconsciousness, then punching her in the face/head and other parts of her body – causing injuries that were *so severe* that when she went to the ER, the attending physician saw signs of a possible skull fracture and ordered a CT scan; although it turned out that her skull wasn't fractured, she was diagnosed with an "[a]cute head injury" and concussion.  Laidman Decl Ex. E at 78-79.  *Even Bauer* acknowledges L.H.'s Petition "describe[s] shocking and graphic acts of alleged nonconsensual violence."  FAC ¶ 46.  No reasonable person would think differently of Bauer if the original Article had reported that the CT scan showed that he did not actually fracture L.H.'s skull.

The FAC adds no new *facts* concerning falsity.  Instead, Bauer simply repeats, in different iterations, that including the CT scan results would have "dramatically" changed the gist of the Article.  *See, e.g.*, FAC ¶¶ 44-48; 116.  This is unavailing, as the cases cited above demonstrate.

Bauer's strained attempt to create some material "falsity" are equally without merit.  He alleges that the CT scans showed no "probability" that any fracture occurred, "whether detected or undetected."  FAC ¶ 40.  But this argument relies on a misreading of the records.  The complete Petition, including L.H.'s medical records, does not eliminate the possibility of a fracture.  Section II.A*, supra*; Order at 17.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Similarly, Bauer's assertion that it is "grossly misleading" to say that L.H. had "signs of a basilar skull fracture" if the CT scans ultimately showed no acute fracture (FAC ¶ 45) is absurd. A patient who complains of vomiting and sudden pain in his lower right abdomen has clinical "signs" of appendicitis. That remains true even if he later is diagnosed with gastroenteritis.

Bauer also asserts that by omitting the CT scan result, "the Article communicated a different gist of the Complainant's … credibility, and consent than an accurate report would have." FAC ¶ 116. This also is nonsensical. There is no logical reason why the CT scan results would alter a reader's perception of L.H.'s *credibility*: her declaration accurately stated the initial diagnosis from the ER doctor, and also accurately stated the ultimate diagnosis: an "acute head injury and assault by manual strangulation." Laidman Decl. Ex. A at 33. Bauer's argument assumes the false premise that the medical records contradict L.H.'s declaration, which they do not. *Id.* at 72, 79, 98, 105.

Bauer's allegations about consent are even more convoluted. FAC ¶¶ 47-48. The Petition is unambiguous in alleging that L.H. did not consent to the specific physically violent acts committed by Bauer. Laidman Decl. Ex. A at 29-31. The CT scan results do not alter anything.

Bauer failed again to adequately plead that the omission of the CT scan results substantially altered the "gist" or "sting" of the Article. Because he cannot show, as a matter of law, that the Article was materially false, his claim must be struck for this independent reason.

**D.    The Article Is Privileged as a Fair and True Report**

Although the Court did not previously reach the issue, Bauer's Count One also fails because the Article is privileged as a fair and true report of court records.

The First Amendment and California law provide absolute protection for "fair and true" reports of court filings, such as the Petition. Civ. Code § 47(d); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975). The privilege is broadly

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

applied; doubts "are to be resolved in favor of finding a privilege." *Tiedemann v. Superior Ct.*, 83 Cal. App. 3d 918, 925 (1978).  Whether the allegations in the court filing are true is irrelevant; under state and federal law, reporting their contents is absolutely privileged.  *Dorsey*, 973 F.2d at 1436-37.  All that is required is that the Article accurately convey the "gist" or "sting" of the court records that are the subject of the report, "as measured by [its] impact on the average reader."  *Crane v. Ariz. Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992).

The Article easily meets this standard.  It quoted extensively (often verbatim) from L.H.'s declaration; it also made clear to readers the unchallenged nature of her allegations.  That is precisely the kind of reporting the privilege is designed to protect.  *E.g.*, *McClatchy Newspapers v. Superior Court*, 189 Cal. App. 3d 961, 977 (1987) (a "verbatim quote" "epitomizes the meaning of 'fair and true report'").  Including the CT scan result would not have changed the meaning of the Petition or the thrust of the Article, *see supra* at 13-16, and its omission does not vitiate the privilege.  *E.g.*, *Crane*, 972 F.2d 1511 at 1522 (privilege not overcome by omission of details that would "not materially alter the tenor of the story").  Because the privilege bars Bauer's claim, it should be struck on that additional basis.

**E.    Bauer Does Not Adequately Plead Actual Malice**

This Court held that, even assuming the Article implied that Bauer fractured L.H.'s skull, Bauer failed to plead facts sufficient to establish a probability that he could prove by clear and convincing evidence that the Journalists acted with constitutional actual malice.  Order at 16-17 (citing multiple grounds for conclusion).

The FAC does not cure this defect; instead, it largely repleads allegations this Court already deemed insufficient or irrelevant as a matter of law.  *E.g.*, FAC ¶¶ 63 (relying on article not authored by the Journalists); 64-70 (refusal to retract); 70 & 76 (purportedly insufficient correction); 90-108 (post-publication events).  The only other new allegations do not come close to meeting Bauer's burden of adequately

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

pleading actual malice.

### 1. Bauer Must Plead Actual Malice

There is no dispute that Bauer is a public figure who must adequately plead that the Article was published with constitutional actual malice.  Order at 16.  Here, because Count One is based solely on an alleged "implication," Bauer first must plead facts showing that the Journalists[13] *intended* the implication he alleges: namely, that Bauer fractured L.H.'s skull.  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) ("[t]he language must not only be reasonably read to impart the false innuendo, but it must also *affirmatively suggest* that the author intends or endorses the inference") (emphasis added); *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1187 (9th Cir. 2001) ("[T]here is no actual malice where journalists unknowingly mislead the public.").  Bauer also must plead facts sufficient to show that they published that implication "with knowledge that it was false or with reckless disregard of whether it was false or not."  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984) (citation omitted).  This is a high hurdle; reckless disregard means the defendant "must have made the false publication with a high degree of awareness of probable falsity[ ] or must have entertained serious doubts as to the truth of his publication."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

Bauer cannot satisfy this requirement with "general allegations that a defendant should have known or should have investigated the truth."  *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).  But despite having a second chance to meet his burden, Bauer failed to allege facts sufficient to establish constitutional actual malice.

---

[13] The inquiry focuses on the state of mind of the "individual responsible for publication," not the organization as a whole.  *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 2. Bauer's Pleaded Facts Do Not Demonstrate Actual Malice

As a threshold matter, Bauer's attempt to plead actual malice relies on a misstatement of the record. Bauer again asserts that L.H.'s medical records "directly contradicted the Complainant's statement in her petition about having signs of a skull fracture and that [sic] the Complainant obviously knew she did not have a skull fracture when she wrote her petition." FAC ¶ 61. This is a fallacy: even assuming The Athletic had the medical records before the Article was published, *there is no contradiction*.

The medical records state expressly that L.H. had signs of a skull fracture. Laidman Decl. Ex. E at 78, 104 ("Signs of basilar fx (raccoon eyes, Battle's sign)"). Bauer tries to draw a distinction between a statement that L.H. was "diagnos[ed with] signs of a skull fracture" and his preferred phrasing – that she "presented with indications of a possible basilar skull fracture" (FAC ¶ 76) – but this is sophistry. The two phases mean the same thing; a choice of synonyms is not evidence of actual malice. *See Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1170 (2005) (granting SLAPP motion where alleged false statement "was not so far from the truth as to permit an inference of actual malice").

*Second*, Bauer argues that actual malice is shown by The Athletic's refusals to correct the Article. FAC ¶¶ 64-70. This is the same meritless assertion Bauer previously offered (Dkt. 1(Complaint) ¶¶ 57-59), but an alleged "failure to correct" is not evidence of actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964). Moreover, the Athletic *did* publish the very correction that Bauer requested. *Supra* at 6.

*Third*, the correspondence Bauer added to his FAC reinforces that The Athletic did not publish with actual malice. *See* FAC Exs. C-E. That correspondence shows that editors did not agree that the Article implied that L.H.'s skull was actually fractured, and they believed the Article accurately conveyed the contents of the Petition. *Id.* Nevertheless, they were open to new information: they

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

asked Bauer for evidence (including the CT scan results); they considered his concerns; and − although they expressly reserved their rights − they published the very language that Bauer's counsel requested.  *Id.*, Ex. C at 3-5.  That conduct evidences an *absence* of actual malice.  *E.g., New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 166 (Tex. 2004) ("prompt" clarification after receiving retraction demand "evidence[d] a lack of actual malice"; collecting similar cases); *Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977) (prompt retraction of allegedly inaccurate statements "is significant and tends to negate any inference of actual malice.").[14]

   *Fourth*, Bauer again attempts to rely on court proceedings that occurred *after* publication.  FAC ¶¶ 90-108.  In so doing, Bauer substantially mischaracterizes those proceedings, inaccurately asserting that L.H.'s allegations of violence by Bauer were discredited.  FAC ¶¶ 94-95, 98, 104.  *See Bauer v. Hill*, 2022 U.S. Dist. LEXIS 212819, at *16 (C.D. Cal. Nov. 23, 2022) (rejecting Bauer's mischaracterization of the Superior Court proceedings).  In any event, those allegations are irrelevant to actual malice.  *See Buttar*, 2022 WL 1215307, at *9 (email sent after publication of an article could not serve as a basis for actual malice).

   *Finally*, Bauer attempts to plead around the Court's previous finding that the medical records contained uncertainty as to whether or not L.H. suffered any fracture and therefore do not demonstrate actual malice.  Order at 17.  To do this, Bauer misleadingly quotes the records of L.H.'s follow-up appointment, claiming her doctor only ordered an MRI of her "face and head to in order to 'rule out' an

---

   [14] Bauer's allegation that a failure to obtain or read the medical records would constitute actual malice (FAC ¶ 62) is unsupported by established law.  *E.g., Harte-Hanks*, 491 U.S. at 688 (alleged "failure to investigate … is not sufficient" to establish actual malice).  There was no obvious reason to think L.H.'s medical records would be inconsistent with her declaration (and, as set out above, they are not).  *Infra* at 13.

undetected fracture of the jaw."  FAC ¶¶ 39-40.  But the phrase "of the jaw" is an insertion *by Bauer* – it is not in those records.  *See* Laidman Decl. Ex. E at 93-94.

The medical records state that the MRI was to "r/o undetected Fx *on CT*" – *i.e.* to rule out an undetected fracture on the CT scans.  *Id.* (emphasis added).  The records also state, under "Head injury with loss of consciousness," that a "follow up MRI" was ordered of L.H.'s "brain."  *Id.*  It would make no sense to order a "brain" scan if the only clinical concern was a jaw injury.  Bauer's attempt to artfully interpret the medical records by inserting words and medical information that are not there simply proves that they lack the clarity he tries to claim.  Because Bauer has failed adequately to plead actual malice, his claim should be struck for this independent reason.

## V.   CONCLUSION

For each of the foregoing reasons, Bauer's Count One should be struck in its entirety, with prejudice.

DATED: February 14, 2023

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
DAN LAIDMAN
DIANA PALACIOS
ZOË N. McKINNEY

THE NEW YORK TIMES COMPANY
DANA R. GREEN

By: */s/ Kelli L. Sager*

Kelli L. Sager

Attorneys for Defendants
THE ATHLETIC MEDIA COMPANY
and MOLLY KNIGHT

21

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

## CERTIFICATE OF COMPLIANCE

2

The undersigned, counsel of record for Defendants The Athletic Media

3

Company and Molly Knight, certifies that this brief contains 6,945 words, which

4

complies with the word limit of L.R. 11-6.1.

5

DATED: February 14, 2023          DAVIS WRIGHT TREMAINE LLP

6

                                  KELLI L. SAGER
                                  DAN LAIDMAN

7

                                  DIANA PALACIOS
                                  ZOË N. McKINNEY

8

9

                                  THE NEW YORK TIMES COMPANY

10

                                  DANA R. GREEN

11

12

                                  By: */s/ Dan Laidman*
                                           Dan Laidman

13

14

                                  Attorneys for Defendants

15

                                  THE ATHLETIC MEDIA COMPANY
                                  and MOLLY KNIGHT

16

17

18

19

20

21

22

23

24

25

26

27

28

SPECIAL MOTION TO STRIKE
4859-0212-4113v.3 0113180-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899